A. M. TENNEY, et al., v. CITY OF MIAMI BEACH

11 So. (2nd) 188                                    June Term, 1942
December 22, 1942                                        En Banc

*J. E. Yonge, Stanley Milledge* and *Thomas H. Anderson,* for petitioners.

*J. Harvey Robillard,* for respondent.

TERRELL, J.:

This was a class suit instituted under Section Fourteen, 1931 Chancery Act. The bill of complaint prayed that cer-

tain assessment liens imposed by the City of Miami Beach on lands abutting Collins Avenue be cancelled and that all funds collected by the City pursuant to said liens be restored to the property owners. The chancellor found for the complainants and decreed accordingly. His decree was affirmed by this Court. City of Miami Beach v. Tenney, et al., 150 Fla. 241, 7 So. (2nd) 136.

On the going down of the mandate, the plaintiff petitioned the court to permit those who had not filed their claims with the master to do so and at the same time the, attorneys for the plaintiffs petitioned the court to be allowed attorneys' fees from each person benefitted by the litigation. The court granted both petitions and as to attorneys' fees, he found that one third of the amount recovered for each member of the class was a reasonable fee to be allowed. This decree was entered on August 3, 1942, but was on August 29th, stayed and suspended. On October 9, a third decree was entered wherein the court found that he was without jurisdiction over those who had paid nothing on the liens but as to those who had paid, he decreed that recovery be conditioned on payment of attorneys' fees. The latter decree is here for review by certiorari.

It appears that the City of Miami Beach imposed special assessment liens on the lots of 232 owners abutting Collins Avenue. A. M. Tenney and another contending that said liens were imposed without legal authority and were void brought this as a class suit in behalf of all the property owners in like situation to cancel the liens. Query, is the chancellor impowered to require the property owners so affected to contribute to the expenses of the litigation, including a reasonable attorney's fee as a condition precedent to cancellation of the liens on their property?

There is no basis whatever for the chancellor's ruling that he was without jurisdiction over those who had paid nothing on the liens against their property. The suit was instituted as a class suit as provided by Section Fourteen of the 1931 Chancery Act. This Act in terms provides that when the question is one of common or general interest to many constituting a class so numerous as to make it imprac-

ticable to bring them all before the Court, one or more may sue or defend for the whole.

The very purpose of a class suit is to save a multiplicity of suits, to reduce the expense of litigation, to make legal processes more effective and expeditious, and to make available a remedy that would not otherwise exist. The chancellor had jurisdiction of the parties to the cause and the subject matter of the litigation. When this is the case, those of the class for whose benefit the suit is brought are in effect parties plaintiff. Wheelock v. First Presbyterian Church of Los Angeles, 119 Cal. 477, 51 Pac. 841; Whiting v. Elmer Industrial Assn., 61 N. Y. S. 27. If this is not the case and the subject matter of the litigation cannot be held to respond to its necessary cost, then the advantage to be derived from a class suit is nullified. To have required 232 separate suits here would have been prohibitive and ridiculous and would have deprived many of a remedy. When the court permits a class suit to be brought or defended by one or more of the class, it necessarily follows that absent parties are properly represented and are bound by the decree.

If the only means of making the judgment effective is to proceed against the res or the subject matter of the suit, the chancellor has power to do so. A class suit is brought on the theory that claims, issues, and defenses are common and that when the right of the nominal parties to the suit is adjudicated, the right as to all becomes in effect adjudicated. If the chancellor cannot then enter a judgment that will affect all in the class, the very basis of the suit is destroyed. In the case at bar, the Court had jurisdiction of the City and when the right of Tenney was adjudicated, it was competent for him to adjudicate the right of all in the class. His decree may require cancellation of the void liens on application therefor and on condition of payment by each party of a proportionate amount of the costs including a reasonable attorney's fee.

If such a decree is for any reason inequitable as to any member of the class affected, he may make showing of such fact when he applies for cancellation and the chancellor may enter such decree as to him is just and proper. It matters

not whether he be a nominal party to the cause or not if his situation is such as to place him in the class of those affected.

The hard and fast rule of the common law requiring the parties to a cause to be formally before the court has never been a part of the chancery practice when nothing more is involved than a decree distributing the cost of the litigation. In equity, this is often a practical matter as much as a legal one and all sorts of distinctions have been observed. Daniel's Chancery Pleading and Practice (2nd Ed.) 1434-1440, 2 Street Federal Equity Practice, paragraphs 2033 to 2048. In the case at bar, Tenney sued as the representative of more than 170 of the 232 lot owners affected. His suit resulted in liberating their lands from void liens imposed by the City. To hold that those likewise affected as Tenney cannot be required to bear their portion of the burden is to admit that equity practice is effete and has not kept pace with the factual situations that precipitate litigation. It is not essential that equity travel on the back of an ass to preserve due process. If those who administer it insist that it travel in this fashion, litigants who travel by the motor route will find other means to dispense equity.

In this pronouncement, we are supported by Trustees of Internal Improvement Fund v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Central R. R. and Bkg. Co. Pettus, 113 U. S. 116, 105 Sup. Ct. 387, 28 L. Ed. 915; and Sprague v. Ticonic Nat. Bank, 307 U. S. 161, 59 Sup. Ct. 777, 83 L. Ed. 1184. These were class suits in which trust funds were brought into the court by a nominal party but in which all of the class were entitled to participate. It was not questioned that all in the class had their rights adjudicated by the litigation. The court held that all should help bear the burden of the litigation on the theory that their rights were adjudicated and that it would be unconscionable not to require them to help. We think these cases conclude the case at bar. The gist of the matter is one of equity and the judgment is not assailed by any one affected by it.

As to the fee, the record discloses that the attorneys here represented more than 170 of the 232 claimants who contracted on a contingent basis for one third of the amount re-

covered. It is shown that the recovery was $152,168.18, $98,921.55 of which went to the clients of counsel employed here. Considering the amount of the claims, the difficulties encountered, the expense attorneys are forced to incur, and the fact that the litigation ran over a period of four years, the contract was not exorbitant and was not out of line with the usual run of such contracts. There was ample evidence to support the reasonableness of the contract.

If there had been nothing more than prosecuting a law suit to recover this amount, the fee might be exorbitant but that is not the case. The liens had to be shown to be illegal. Counsel took a chance on showing this. If they had failed they would have been out their labor and expenses for nothing. They have been out of any compensation for four years, must bear the expense of the litigation and when they get this paid including other charges in the way of income taxes, office expense, etc., the fee will be a modest one for the service rendered. It was agreed to freely and voluntarily by those who are benefitted and will shock the conscience of no one when all the elements affecting are considered.

It is our conclusion that the interlocutory writ of certiorari be granted and that the order or decree of October 9th, 1942, (dated by mistake September 9th, 1942) should be and is hereby quashed, and that the decree of August 3 be reinstated with directions to the chancellor to proceed as directed in this opinion.

It is so ordered.

BROWN, C. J., WHITFIELD, BUFORD and ADAMS, JJ., concur.

CHAPMAN, J., concurs specially.

THOMAS, J., agrees to conclusion.

CHAPMAN, J., concurring specially:

On August 3, 1942, the Circuit Court of Dade County, Florida, on petition of counsel in the case of A. M .Tenney, et al., v. City of Miami Beach, by an appropriate order held that the amount of a reasonable attorneys' fee to be allowed by the Court under the law to the plaintiffs in said suit, based on the testimony adduced, was one-third of the amount re-

covered by or saved to the taxpayers, plaintiffs or parties to the suit. The same order referred the cases to a Master, with directions to take testimony on enumerated issues and report his finding, with recommendations. On August 29, 1942, the circuit court *sua sponte,* entered an order staying and suspending the previous order in the cause dated August 3, 1942, and fixed a date for a further hearing thereon.

Pursuant to a hearing of counsel, the Court, on September 9, 1942, entered a subsequent order in which his previous order dated August 3, 1942; (a) was annulled and set aside; (b) that the court was without jurisdiction or power to decree payment of attorneys' fees by the class parties not paying their part of the assessments; (c) those parties to the suit having contributed to the fund and having made no express agreement for attorneys' fees or expenses the court was ready to hear; (d) the restraining order previously made against the parties who have paid no assessments was dissolved.

The petition for an interlocutory writ of certiorari prays to quash the order dated September 9, 1942, and reinstate the order dated August 3, 1942. The petition for attorneys' fees is based on substantially the factual situation viz: The City of Miami Beach, on December 9, 1936, adopted a resolution authorizing the issuance of bonds for designated municipal improvements, included among them being the paving of a considerable portion of Collins Avenue. A majority of the qualified freeholders at an election called voted in favor of the issuance of the bonds, which were validated, confirmed and sold. These bonds thereby became the general obligation of the City of Miami Beach. Thereafter on March 17, 1937, the said city adopted a resolution providing for the improvement or pavement of said portions of Collins Avenue in said City at an estimated cost of approximately $200,000.00. The costs of the improvement of Collins Avenue of said City were assessed and declared assessment liens against the real property within said City and abutting on said paved sections of Collins Avenue. The face amount, with interest, of many of these liens was paid to the City of Miami Beach by the abutting property owners, while others have not. A class

suit was brought and the assessment liens imposed against the lands by said City abutting on Collins Avenue were cancelled and the lands abutting Collins Avenue were discharged from the alleged liens. The order of cancellation was on appeal here affirmed. See City of Miami Beach v. Tenney, 150 Fla. 241, 7 So. (2nd) 136.

The record discloses agreements for attorneys' fees existing between the attorneys and 170 of the parties owning land abutting Collins Avenue and whose property was benefitted by the terms of the decree, but such an agreement for counsel fees does not exist as to the remaining 62 parties or their property abutting Collins Avenue and benefitted by the provisions of the cancellation decree. The chancellor concluded that he did not have jurisdiction over the 62 parties so situated and for this reason had no power to adjudicate or fix the amount of compensation for counsel fees. The jurisdiction of the court over the subject matter of the litigation and the parties was invoked by the plaintiffs under the provisions of Section 14 of the 1931 Chancery Act (Chapter 14658, Acts of 1931, Laws of Florida). The land abutting on Collins Avenue to which liens were assessed constituted a class suit having common or several interest and it was impracticable to bring before the court the 232 owners when, by operation of law, the plaintiffs could invoke in one suit the court's jurisdiction for themselves and others similarly situated. It is established that equity will intervene for the prevention of a multiplicity of suits. Complete and final relief may be given an entire community which may otherwise require an indefinite number of separate suits. Pomeroy's Equity Jurisprudence, Vol. 1 (5th Ed.) par. 260, pages 536-37, states that rule viz:

". . . In all these suits by lot-owners to be relieved from a local assessment, and by taxpayers to be relieved from a tax or burden of public debt, there is no pretense of any privity, or existing legal relation, or common property or other right, among the plaintiffs individually, or between them as a body and the defendant. There is no common right of the single adversary party against them all, as is found in the case of a person against his parishioners for tithes, or of the lord of

a manor against his tenants for a general fine, or for certain rights of common; nor is there any common right or interest among them against their single adversary. The only community among them is in the questions at issue to be decided by the Court; in the mere external fact that all their remedial rights arose at the same time, from the same wrongful act, are of the same kind, involve similar questions of fact, and depend upon the same questions of law. This sort of community is sufficient, in the opinion of so many and so able courts, to authorize and require the exercise, under such circumstances, of the equitable jurisdiction, in order to prevent a multiplicity of suits."

We hold the court had jurisdiction of the parties and the subject matter of the suit.

Counsel for appellants contend that the court below had the judicial power to fix the amount of and enter a decree providing for compensation for services rendered by counsel, not only for the 170 owners of land abutting Collins Avenue with whom agreements had been reached, but the remaining 62 owners receiving benefits from the decree but with whom agreements did not exist. They adopt the logic appearing in one of the cited cases to the effect that if a person observed another daily laboring in his field and the labor produces fruit for the owner and the latter daily and knowingly permits him to continue his activities, then it is reasonable to assume that the labor was performed with the approval of the owner and it was his intention to fully compensate, otherwise his intention not to compensate should have been brought to the attention of the laborer prior to the rendition of the services. The cases cited are largely class suits in which trust funds by counsel were brought into court. See Sprague v. Ticonic National Bank, 307 U. S. 161, 59 Sup. Ct. 777, 83 L. Ed. 1184; Central R. R. & Banking Co. v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915; Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157. It is pointed out that all the parties are in a court of equity; the professional services of counsel for the appellants resulted in the cancellation of a lien against 232 pieces of property; the lands cleared from these liens should be charged with costs of the class

suit, inclusive of attorneys' fees; that the rule of compensation for attorneys now applicable to trust funds should be applied to the facts in the class suit the decree in which was recently affirmed by this Court.

The case of State v. Florida Central R. R. Co., 16 Fla. 703, involved the allowance of attorneys' fees in a chancery proceeding having many of the earmarks of a class suit. It was held that counsel fees could be decreed out of a fund created by his employment when the fund was for the joint benefit of persons similarly situated. In the case of Lewis v. Gaillard, 70 Fla. 172, 69 So. 797, this Court refused to apply the rule enunciated in State v. Florida R. R. Co., *supra,* because counsel's employment and labor did not create the fund out of which compensation was sought, but the employment and objective of counsel were to destroy the trust. The above cases were cited with approval in Bay Biscayne Co. v. Baile, 73 Fla. 1120, 75 So. 860, when we held that a court of equity has the inherent power to decree the payment of costs and reasonable attorneys' fees and may decree a lien on the corpus for its payment. The creator of a trust can employ counsel to protect the property. Good faith and diligence require him to protect the property of the beneficiaries and reasonable attorneys' fees are chargeable against the trust property. Reasonable compensation for attorneys chargeable against the trust property where the trust was created by a written instrument was approved in Smith v. Massachusetts Mut. Life Ins. Co., 116 Fla. 390, 156 So. 498, 95 A.L.R. 508; Smith v. Jones, 120 Fla. 237, 162 So. 496; A. J. Richey Corp. v. Garvey, 132 Fla. 602, 182 So. 216.

Independently of the provisions of an instrument creating a trust fund, courts of equity have the inherent power to decree payment of reasonable attorneys fees in cases where the industry and resourcefulness of counsel largely produces or creates a fund for the use and benefit of others. See State v. Florida Central R. R. Co., *supra.* If the instrument creating the trust fails to provide for attorneys' fees and a statute authorizing compensation does not exist, a court of equity can or may decree reasonable and just compensation. See Pomeroy's Equity Jurisprudence, Vol. 4, (5th Ed.) par.

1084A, page 243; Bogert on Trusts & Trustees, Vol. 4, par. 979, pages 2877-2883. The lower court had jurisdiction of the parties and the subject matter of the suit and the power to hear the parties and to enter a decree adjudicating reasonable compensation for counsel representing the class plaintiffs and create liens on the property benefitted.

The agreement of one-third of the amount received or saved by counsel to the 170 abutting land owners on Collins Avenue, it is contended, is the proper yardstick of measurement for the remaining 62 abutting land owners with whom no agreement of counsel fees exists. It is asserted that such a rule is reasonable and just and sustained by the testimony of a number of prominent attorneys of the Miami bar. The chancellor below, in the exercise of his discretion and from the evidence before him, refused or otherwise declined in a subsequent order, to apply this rule and for this reason we are requested to reverse his conclusions. We hold, as a matter of law, that counsel are entitled to a reasonable attorney fee for the professional services rendered, and the same be paid in an equitable manner by the 232 abutting land owners. The 170 abutting land owners had a lawful right to contract to pay counsel one-third of the amount received or saved them by counsel in the litigation, and with this contractual right we decline and refuse to interfere, but the chancellor, for reasons satisfactory to himself, concluded that the one-third agreement rule should not be applied to the remaining 62 abutting property owners or enter liens on this rule for the proportionate amount of the fee against lands discharged from the liens abutting Collins Avenue. Possibly it was his theory that *an adversary hearing* should be given the 62 abutting land owners and that their day in court be preserved; that they could be heard by counsel, an opportunity allowed to adduce testimony upon the issues, and obtain a pronouncement of the court as to the reasonableness of the fee effective against the property of each of the abutting property owners.

The interlocutory writ of certiorari should be granted and the order dated September 9, 1942 should be quashed.

The cause should be remanded for further proceedings.

BROWN, C. J., concurs.