662 So.2d 309 (1995)
David KUHNLEIN, et al., Appellants,
v.
DEPARTMENT OF REVENUE, et al., Appellees.
No. 85618.
Supreme Court of Florida.
October 12, 1995.
*310 Christopher K. Kay and Michael J. Beaudine of Foley & Lardner, Orlando; W. Gordon Dobie, Bruce R. Barun and Jennifer J. Demmon of Winston & Strawn, Chicago, IL; and Raymond Ehrlich of Holland & Knight, Jacksonville, for Appellants on behalf of Class Plaintiffs.
Robert A. Butterworth, Attorney General; Eric J. Taylor, Assistant Attorney General, Tax Section, and George L. Waas, Assistant Attorney General, Civil Section, Tallahassee, for Appellees on behalf of the Department of Revenue.
Andrew Kayton, Legal Director, Miami, Amicus Curiae on behalf of American Civil Liberties Union Foundation of Florida, Inc.
WELLS, Justice.
We have on appeal a final order on class counsel's petition for fees and expenses and a final order on class counsel's motion for distribution of residual funds. The trial court held a hearing and issued orders on these motions within the time prescribed by our decision in Kuhnlein v. Department of Revenue, 659 So.2d 248 (Fla. 1995) (Kuhnlein II). In that case we decided the issues pertaining to interest owed to class members and relinquished jurisdiction to the trial court to consider applications for and enter orders on attorney fees and costs. We also reserved jurisdiction to review the court's orders on fees and costs if any party petitioned this Court for review within ten days of their entry. Additionally, we reserved jurisdiction to take such further action as necessary to implement the circuit court's refund plan. We therefore have jurisdiction pursuant to article V, section 3(b)(5) of the Florida Constitution based upon our reservation of jurisdiction in Kuhnlein II.
In a common-fund case like the one before us, the defendant pays a specified sum for the benefit of class members. The class attorneys can then petition the court to obtain fees from the fund although contingency fee agreements were entered by only a small number of class members. In their petition for fees and expenses in the instant case, class plaintiffs' counsel requested an award of fees based on a percentage of the entire common fund created when we held section 319.231, Florida Statutes (1991), violative of the Commerce Clause of the United States Constitution. See Department of Revenue v. Kuhnlein, 646 So.2d 717 (Fla. 1994) (Kuhnlein I), clarified by Department of Revenue v. Kuhnlein, 646 So.2d 717 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 2608, 132 L.Ed.2d 853 (1995). Class counsel further alleged that 14 percent of the common fund provided for a reasonable fee. The Attorney General, on behalf of the Department of Revenue, *311 argued that class counsel's request for fees failed to take into account the hours reasonably expended as well as other lodestar factors that should be considered in awarding fees from a common fund.
The trial court found that the percentage method of calculating fees was appropriate and awarded class counsel 10 percent of the common fund, which was estimated at $188.1 million.[1] The court held that this fee was reasonable in light of the risks involved in the case and the magnitude of the benefit counsel conferred on the class. The court also determined that the factors enumerated in Camden I Condominium Ass'n v. Dunkle, 946 F.2d 768 (11th Cir.1991),[2] demonstrated that 10 percent was an appropriate fee for the results achieved.
In a separate order responding to class counsel's motion for distribution of residual funds, the court directed that unclaimed fees be divided among class members in a second distribution to offset or partially offset the fees and costs awarded to class counsel. Class counsel would then receive the remaining funds up to 10 percent of the entire residual fund. Finally, the court ordered that the State receive any remaining funds.
The Attorney General timely filed a petition with this Court for review of the trial court's orders awarding class counsel attorney fees and funds not claimed by absent class members. In response, class plaintiffs' counsel filed a motion to dismiss the State's appeal. As grounds for dismissal, class counsel alleged that the issues presented did not merit review by this Court, the need to expedite the refund process, and the State's lack of standing to contest the reasonableness of the attorney fees awarded. We reject class counsel's grounds for dismissal because we expressly provided for our review of these orders in Kuhnlein II.
Furthermore, as the trial court did, we reject class counsel's contention that the State, through the Attorney General, lacks standing in this case. In class actions that result in the creation of a common fund the interest of class counsel in obtaining fees is adverse to interests of the class. See Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513 (6th Cir.1993). Class counsel's role in these cases essentially changes from one of fiduciary for the class to claimant against the clients' fund created for the clients' benefit. Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985). Accordingly, class counsel is not in a position to effectively represent the interests of the class in respect to the assessment of attorney fees and costs.
It is self-evident, however, that the State has an interest in protecting its citizens from excessive fees or costs which would diminish the amount of the tax refund they are entitled to receive from the common fund in this case. We conclude that this interest provides an adequate basis for standing and that the Attorney General is the proper representative of that interest. See Art. IV, § 4, Fla. Const.; § 16.01(4), Fla. Stat. (1993).
The question we must now answer is whether the trial court erred in this common-fund case by awarding fees using a percentage approach rather than the lodestar approach which must be applied in statutory fee-shifting cases pursuant to our decisions in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), and Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990).[3] We find, as we did in In re Estate of Platt, 586 So.2d 328 (Fla. 1991), that the decision as to which approach is to be used is an issue of law. We conclude that the court made an error of law in applying the percentage rather than the *312 lodestar approach and reverse the attorney-fee award.[4]
In the instant case, the trial court found that to determine a reasonable fee in common-fund cases, courts apply the "percentage" approach, in which a reasonable fee is calculated as a percentage of the common fund. The percentage is first chosen by the trial court and then applied to the fund in order to calculate the fees to be awarded. In support of this conclusion, the trial court cited to Camden I, in which the United States Court of Appeals for the Eleventh Circuit mandated the percentage approach in all common-fund cases. 946 F.2d at 774. We note, however, that the Camden I approach is not uniformly accepted in the federal courts. Rather, a number of federal courts continue to use the federal lodestar analysis to determine the amount of attorney fees which are reasonable under the circumstances of a particular case. See Florin v. Nationsbank of Georgia, N.A., 34 F.3d 560 (7th Cir.1994); Rawlings, 9 F.3d at 517; Longden v. Sunderman, 979 F.2d 1095 (5th Cir.1992); Harman v. Lyphomed, Inc., 945 F.2d 969 (7th Cir.1991); Florida v. Dunne, 915 F.2d 542 (9th Cir.1990); In re Agent Orange Product Liability Litigation, 818 F.2d 226 (2d Cir.1987); City of Detroit v. Grinnell Corp., 560 F.2d 1093 (2d Cir.1977).
We have carefully considered the reasons stated by the Camden I court for adopting the percentage approach. We find, however, that our decisions in Rowe and Quanstrom, which employ the factors enumerated in the Florida Bar Code of Professional Responsibility as an initial basis for determining reasonable attorney fees,[5] provide a more consistent and objective structure for determining reasonable fees in common-fund as well as fee-shifting cases. As we stated in Platt, "`[r]easonable' also means that the fee should be consistent with other fees set in similar cases." 586 So.2d at 336.
We conclude that objectivity and consistency in setting fees are best achieved by beginning the attorney-fee analysis with a lodestar amount based on the hours expended on legal services and rates charged for similar services. As we stated in Rowe:
[P]artially because of the substantial increase in the number of matters in which courts have been directed by statute to set attorney fees, great concern has been focused on a perceived lack of objectivity and uniformity in court-determined reasonable *313 attorney fees. Some time ago, this Court recognized the impact of attorneys' fees on the credibility of the court system and the legal profession when we stated:
There is but little analogy between the elements that control the determination of a lawyer's fee and those which determine the compensation of skilled craftsmen in other fields. Lawyers are officers of the court. The court is an instrument of society for the administration of justice. Justice should be administered economically, efficiently, and expeditiously. The attorney's fee is, therefore, a very important factor in the administration of justice, and if it is not determined with proper relation to that fact it results in a species of social malpractice that undermines the confidence of the public in the bench and bar. It does more than that. It brings the court into disrepute and destroys its power to perform adequately the function of its creation.

Baruch v. Giblin, 122 Fla. 59, 63, 164 So. 831, 833 (1935).
Although the amount of an attorney fee award must be determined on the facts of each case, we believe that it is incumbent upon this Court to articulate specific guidelines to aid trial judges in the setting of attorney fees. We find the federal lodestar approach ... provides a suitable foundation for an objective structure.
Rowe, 472 So.2d at 1149-50. We rely on time expenditures multiplied by a customary rate as a base fundamental value because we conclude that reasonableness is directly related to how the market values legal services for which clients negotiate rates and scrutinize the hours expended at those rates. Additionally, the lodestar amount provides the court with an evidentiary basis to use in evaluating what is a reasonable fee.
On the other hand, to begin the assessment by arbitrarily picking a percentage amount without any reliance on a cognizable structure invites decisions that are nonobjective and inconsistent. What constitutes a reasonable percentage may differ from one judge to another depending on each judge's predilections, background, and geographical location in the state.
We recognize that Camden I states that the reasonableness of the percentage is to be evaluated on the basis of the factors used in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). We also recognize that those factors are similar to the factors enumerated in rule 4-1.5 of the Rules Regulating the Florida Bar. We conclude, however, that the approach adopted in Camden I lends itself to fee-setting in which a percentage may be arbitrarily chosen and thereafter justified by a boiler-plate recitation of the factors enumerated in that decision.
Class counsel contend that the lodestar approach is not appropriate in common fund cases because it places too heavy an emphasis on the time expended by counsel in the case and insufficient emphasis on the contingency risk and the results obtained for the class. This contention is supported by the decision in Camden I as well as several other federal decisions which have adopted the percentage approach. These courts have concluded that a common fund is itself the measure of success and is thus the benchmark by which a reasonable fee should be measured. See, e.g., Camden I, 946 F.2d at 774; Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1269 (D.C. Cir.1993). We reject this reasoning because we believe that the contingency risk factor, the results obtained, and the other lodestar factors are more equitably taken into consideration by accepting or adjusting the base lodestar calculation and by permitting the use of multipliers. Multipliers were specifically designed to enhance the amount of attorney fees awarded based on the contingency risk factor and the results obtained. See Rowe, 472 So.2d at 1151.[6] Additionally, multipliers which are capped and evaluated on the grounds set forth in Quanstrom ensure that the enhancement is *314 not so substantial that the fees become excessive and thereby unreasonable.
Class counsel and the trial court in its order awarding fees both rely on Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188 (Fla. 1942), as providing precedential support for the contention that in common-fund cases in Florida a percentage approach should be used to determine the amount of fees class counsel receives from the common fund. Specifically, class counsel alleges that as in Tenney, a percentage approach is appropriate because the named parties agreed to pay attorney fees on a percentage basis.
In Tenney, this Court recognized those who received the benefit of the creation of a common fund through a class action should share equitably in the burden of paying attorney fees and costs necessary to the creation of the common fund. Id. at 190. To insure that each class member paid his or her equitable share of the fees, the Court approved the payment of the amount of the attorney fees based upon a percentage contingency fee contract which the court stated was "agreed to freely and voluntarily by those who benefited." Id. at 190. In that class action, however, unlike the class action presently before us, there were 232 claimants, of which 170 contracted on a contingent basis for one-third of the amount recovered. The Tenney Court found that there was ample evidence to support the reasonableness of the contract relative to those who executed the contract. Id. at 190. The case was remanded for the chancellor to determine whether that contract was also reasonable for the 62 claimants who had not agreed to it. Id. at 193 (Chapman, J., concurring specially). In light of our more recent decisions in Rowe and Quanstrom, we find that Tenney only remains viable for the generally accepted rule cited by the trial court that under the "common fund doctrine" lawyers who recover a common fund for the benefit of others are entitled to reasonable attorney fees from the fund.
Furthermore, there is a compelling similarity between common-fund and fee-shifting cases which causes us to disagree with counsel's contention that the fee agreement between class counsel and the named parties should control the approach used to set a reasonable fee. In both cases the court is setting a fee that binds individuals or entities who have not entered a fee agreement. In fee-shifting cases the party paying the fee has not participated in the fee agreement between the prevailing party and that party's attorney. Rowe, 472 So.2d at 1151. Consequently, the fee agreement does not control the amount of the fee. Id. We noted in Rowe that "`[w]ere the rule otherwise, courts would find themselves as instruments of enforcement, as against third parties, of excessive fee contracts.'" Id. at 1151 (quoting Trustees of Cameron-Brown Inv. Group v. Tavormina, 385 So.2d 728 (Fla. 3d DCA 1980)).
Similarly, in common-fund cases brought pursuant to the classification procedure of Florida Rule of Civil Procedure 1.220, most class members do not enter into written contingency fee agreements with class counsel. As in this case, contingency fee agreements in common-fund cases generally are entered only by the named plaintiffs who are a small portion of the class.[7] Consequently, if the court allowed the written fee agreements to control the fee to be awarded from the common fund, it would be enforcing fee agreements to which the vast majority of class members did not consent. Thus, the fact that class counsel and the named parties agreed that attorney fees would be calculated on a percentage basis cannot control what approach the court should use in exercising its inherent power to determine reasonable attorney fees to be paid from the common fund.
Although we conclude that the trial judge erroneously used the percentage approach, we find that the record supplies a sufficient basis to determine a reasonable fee using the lodestar approach. At the hearing before the trial court, class counsel submitted detailed *315 time records reflecting the total number of hours expended on the case. Further, evidence was submitted as to the usual hourly rates charged by class counsel's firms for those hours. The State presented no evidence upon which it could be concluded that the hours expended were not reasonably necessary or that the hourly rates were not usual and customary for the services rendered. Accordingly, based on the circumstances of this case and the record before us, we accept $1,295,493.50 as the lodestar figure. We believe that the full acceptance of class counsel's hours and rates is justified on the basis of an evaluation of all the factors enumerated in rule 4-1.5 of the Rules Regulating the Florida Bar except for the contingency risk factor and the results obtained for the benefit of the class. These two factors are accounted for in determining the applicability and amount of a multiplier.
We have considered whether a multiplier is needed in this case to give effect to the contingency factor and in recognition of the substantial benefit class counsel conferred upon the class members. First, we find that the instant case presents another distinct class of attorney-fee cases, in addition to those presented in Quanstrom, in which a multiplier is appropriate. Next, we set the maximum multiplier available in this common-fund category of cases at 5. By allowing for this increased maximum multiplier, we recognize that it is appropriate in common-fund cases, as differentiated from fee-shifting cases where the multiplier is capped at a 2.5 multiplier pursuant to Quanstrom,[8] to place greater emphasis on the monetary results achieved. Furthermore, a multiplier which increases fees to five times the accepted hourly rate is sufficient to alleviate the contingency risk factor involved and attract high level counsel to common fund cases while producing a fee which remains within the bounds of reasonableness.[9] We emphasize that 5 is a maximum multiplier, and what multiplier, if any, applies depends on the particular case. Based upon the record before us, we conclude that class counsel in this case is entitled to the maximum multiplier available.
Accordingly, we determine that the reasonable attorney fees are $6,477,467.50. This amount plus cost in the amount of $73,529.70 is to be deducted from the total amount of the common fund.[10] The fees and costs as we have calculated them shall be paid as soon as practical to class counsel and in no event should the payment be made more than thirty days from the date this opinion is filed. The amount of the common fund minus the attorneys fees and cost shall then be paid to class members in accord with the plan for distribution approved by the trial court in its order on refund plan dated July 31, 1995, and its order amending refund plan and approving press release dated August 16, 1995. The State is ordered to pay to class counsel the costs taxed by the trial court's cost judgment dated July 13, 1995, and to pay all further costs of administration of the refund.
Finally, we reverse in part the trial court's order on class counsel's motion for distribution of residual funds. We affirm only the portion of the order directing the use of the residual funds for a second distribution to partially or wholly offset the amount paid by each class member for attorney fees and costs. Any residual funds remaining after the second distribution to class members shall become part of the State's general fund.
It is so ordered.
GRIMES, C.J., and OVERTON and ANSTEAD, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion, in which SHAW, J., concurs.
HARDING, J., concurs in part and dissents in part with an opinion.

*316 NO MOTION FOR REHEARING WILL BE ALLOWED.
KOGAN, Justice, concurring in part and dissenting in part.
I agree that the Attorney General has standing to challenge the reasonableness of the attorney's fees awarded in this case. I also concur with the majority's resolution of the residual funds issue. However, I would uphold the award of attorneys' fees made in this case.
I cannot agree that the lodestar approach to setting reasonable attorneys' fees should be the only method available in this state for determining a fair and reasonable fee award in common-fund cases. The lodestar approach was adopted by this Court in Rowe[11] and refined in Quanstrom[12] to apply in "fee-shifting cases"  those cases where the fee will be paid by someone other than the one who received the services. Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz, 652 So.2d 366, 368 (Fla. 1995); In re Estate of Platt, 586 So.2d 328, 333 (Fla. 1991).
The majority recognizes that common-fund cases are a "distinct class of attorney-fee cases" that do not fall within any of the categories outlined in Quanstrom. Majority op. at 315. However, it concludes that the lodestar approach should be the method of choice for setting common-fund fee awards, in part because in both common-fund and fee-shifting cases fees are set by the court for individuals who have not entered into a fee agreement. Majority op. at 314. The fact that many of those who must "pay" the fee in a common-fund case are not party to a fee agreement is the reason the court must set a reasonable fee in the first place. To my mind, this sole similarity with a fee-shifting case does not compel application of the lodestar approach where the fee will be paid from the recovery obtained for a large class of benefited individuals rather than from the losing party.
Florida courts have routinely awarded attorneys' fees in common-fund cases on a percentage basis. Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188 (1942); Bailey Hunt Jones & Busto, P.A. v. Roland Langen, P.A., 632 So.2d 82 (Fla. 3d DCA 1993); City of Miami v. Florida Retail Federation, 423 So.2d 991 (Fla. 3d DCA 1982); City of Miami Beach v. Jacobs, 341 So.2d 236 (Fla. 3d DCA 1976), cert. denied, 348 So.2d 945 (Fla.), cert. denied, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). Even the United States Supreme Court has recognized that, unlike calculation of attorney's fees in fee-shifting cases, a reasonable fee in common-fund cases "is based on a percentage of the fund bestowed on the class." Blum v. Stenson, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984). Consistent with this recognition, the Supreme Court has always awarded fees in common-fund cases based on a percentage of the fund. See, e.g., Boeing Co. v. Van Gemert, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Central R.R. & Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); Internal Improvement Fund Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881).
With the differing rationales for fee-shifting and common-fund fee awards in mind, at least two federal circuit courts have rejected the lodestar approach in favor of the percentage-of-the-fund approach for establishing reasonable fee awards in common-fund cases. See Swedish Hospital Corp. v. Shalala, 1 F.3d 1261 (D.C. Cir.1993); Camden I Condominium Ass'n., Inc. v. Dunkle, 946 F.2d 768 (11th Cir.1991); see also Uselton v. Commercial Lovelace Motor Freight, Inc., 9 F.3d 849 (10th Cir.1993) (implying preference for the percentage-of-fund approach). These federal courts found persuasive the report of a task force appointed by the very court that gave birth to the federal lodestar approach adopted in Rowe. Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973), appeal after remand, 540 F.2d 102 (3d Cir.1976). *317 The Third Circuit Task Force on Court Awarded Attorney Fees compared the respective merits of the lodestar and percentage-of-the-fund approaches to determining a reasonable attorney's fee. Third Circuit Task Force Report on Court Awarded Attorney Fees, 108 F.R.D. 237 (3d Cir.1985). After extensive review of the two methods, the task force recommended that the lodestar approach be retained in statutory fee-shifting cases, but that all fee awards in common-fund cases be awarded as a percentage of the fund, with the percentage being determined as early in the litigation as possible. 108 F.R.D. at 255-56.
Recognition that there are advantages and disadvantages to each approach has led an increasing number of federal circuit courts to hold that either the lodestar or the percentage method may be used in determining a reasonable fee in common-fund cases. See, e.g., In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295 (1st Cir.1995); In re Washington Public Power Supply Sys. Sec. Litig., 19 F.3d 1291 (9th Cir.1994); Florin v. Nationsbank, 34 F.3d 560 (7th Cir.1994); Gottlieb v. Barry, 43 F.3d 474 (10th Cir.1994); Rawlings v. Prudential-Bache Props., Inc., 9 F.3d 513 (6th Cir.1993); but see Longden v. Sunderman, 979 F.2d 1095 (5th Cir.1992) (recognizing that, although lodestar method was applied in that case, prevailing trend is to award common-fund fees based on percentage of fund and noting that Fifth Circuit "has yet to adopt this method"); In re "Agent Orange" Product Liability Litig., 818 F.2d 226 (2d Cir.1987) (appearing to hold that only lodestar method is available for calculating common-fund fees in Second Circuit). In those circuits authorizing either method, selection between the two approaches is within the district court's discretion and is to be made based on the circumstances of each case. See, e.g., In re Washington Public Power Supply System Securities Litig., 19 F.3d at 1295-96; Florin, 34 F.3d at 565; Rawlings, 9 F.3d. at 516. Even the State, in its brief, "does not oppose [an award] based on a percentage of a common fund." It merely takes the position that "the percentage and amount ultimately awarded must bear a reasonable relationship to traditional lodestar factors, most specifically the hours reasonably expended in the prosecution of the case, and the complexity of the case."
After reviewing the relevant decisions and the Report of the Third Circuit Task Force, I am convinced that the percentage-of-the-fund approach should remain available to Florida courts confronted with the task of setting reasonable attorneys' fees in common-fund cases. The fundamental differences between fee awards in common-fund and fee-shifting cases recognized by the Third Circuit Task Force and the various circuit courts and commentators to consider the issue lead me to this conclusion.
While the basic lodestar method of computing a reasonable attorney's fee may be an appropriate starting point in most types of cases, we recognized in Quanstrom that "different criteria for different types of cases must be considered in calculating attorney's fees." 555 So.2d at 835; see also Searcy, Denney, Scarola, Barnhart & Shipley, 642 So.2d at 368 (criteria for calculating a reasonable fee to be paid by non-client will vary with class of case). We have recognized that the principles used in computing fees must be flexible in order to "achieve the legislative or court objective in authorizing the setting of a reasonable attorney's fee" and to ensure adequate consideration of the unique circumstances present in each case. 555 So.2d at 833-35. With these standards in mind, the rationale underlying common-fund fee awards must be considered in determining the proper method for making such awards. Accord Task Force Report, 108 F.R.D. at 254-55 (fundamental differences between fee-shifting and common-fund cases must be considered in fee-setting process); 1 Alba Conte, Attorney Fee Awards § 2.05 at 36 (2d ed. 1993 (differences between objectives of common-fund and statutory fee awards support use of percentage approach in common-fund cases).
The purpose of fee awards in common-fund cases and fee-shifting cases is very different. Brown v. Phillips Petroleum Co., 838 F.2d 451, 454 (10th Cir.), cert. denied, 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); Task Force Report, 108 F.R.D. at 250, 254-55; *318 Conte, § 2.05, at 36-38. The common-fund doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the expense of the successful litigant. Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); Greenough, 105 U.S. at 532, 26 L.Ed. 1157; see also Tenney, 11 So.2d at 190; Task Force Report, 108 F.R.D. at 250. Common-fund fees are taken from the damage recovery that generally will be shared by a large number of benefited individuals rather than assessed against the losing party. In other words, they are "fee spreading" rather than "fee shifting." Task Force Report, 108 F.R.D. at 250. Rather than being based on the equitable concern that those who benefited from litigation share its cost, fee-shifting awards authorized by statute generally further some legislative objective, such as encouraging individual citizens to bring actions to enforce statutory policy or ensuring that one party is not limited in its choice of representation because of an inferior financial position. See Quanstrom, 555 So.2d at 833-835 (explaining the policies behind the various categories of fee-shifting statutes); see also Brown, 838 F.2d at 454 (explaining differences between fee-shifting awards and common-fund awards). Thus, the focus of a fees analysis in a common-fund case is not on the plaintiffs' position as "prevailing parties," but rather is on the benefit conferred on the fund beneficiaries as a result of counsel's efforts. Camden I, 946 F.2d at 774; Conte, § 2.05, at 37.
The Third Circuit Task Force has recognized another significant difference between common-fund and fee-shifting cases. In the former category, where it is likely that few of the beneficiaries are before the court, the judge must act as a fiduciary for those who are paying the fee. As a general rule, no one else is available to perform that function because the defendant has no interest in preservation of the fund and class counsel's interests have become adverse to those of the fund beneficiaries. The judge must make up for the lack of adversarial testing present in fee-shifting cases by taking a more active role in determining a fee in common-fund cases. Task Force Report, 108 F.R.D. at 251. The percentage approach is better suited to this task because it allows for more flexibility in the balancing of the interests of the beneficiaries of the fund who pay the fee and class counsel who earned it.
It is also significant that the fund itself is considered the best measure of success in common-fund cases and logically can serve as a benchmark from which reasonable fees can be determined. Camden I, 946 F.2d at 774; Conte, §§ 2.05, at 37, 2.07, at 44; 3 H.B. Newberg, Newberg on Class Actions, § 14.03 at 14-4 (3d ed. 1992). Because there is no such benchmark in fee-shifting cases the lodestar approach is the only available method to ensure some type of uniformity in fee awards in that type of case. Conte, § 2.05, at 38.
It also appears to be generally accepted that the percentage-of-the-fund approach avoids many of the problems inherent in the lodestar method by promoting efficiency, being easier to administer, and more closely approximating marketplace compensation. See, e.g., In re Thirteen Appeals, 56 F.3d at 307; Swedish Hospital Corp., 1 F.3d at 1269-70. Another compelling reason for allowing fees to be based on a percentage of the fund is the fact that percentage awards provide incentive for class counsel to seek and enter into mutually favorable settlements as early as possible by removing concerns that a minimum number of hours must be logged in order to obtain a reasonable fee. Conte, § 2.08 at 53; Task Force Report, 108 F.R.D. at 247.
Moreover, I believe that the percentage approach, as employed by most federal courts, ensures just as much "objectivity and consistency" in setting common-fund fees as the lodestar method. Majority op. at 8. To ensure objectivity and consistency in calculating and reviewing common-fund fee awards, a number of federal courts rely on the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). See, e.g., Brown, 838 F.2d at 456; Camden I, 946 F.2d at 775. As recognized by the majority, these factors, which were relied on in this case, are similar to those provided for determining a reasonable fee in *319 Rule Regulating The Florida Bar 4-1.5(b), (c).
I agree with the majority that the rule 4-1.5 factors should be employed in determining a reasonable fee in common-fund cases. However, there is no reason that "time and labor required" should be the focal point of the fee analysis, as it is in fee-shifting cases.[13] The "amount involved and results obtained," in other words the fund itself, may be given greater weight where, as here, the risk of non-recovery is high and recovery is directly attributable to the efforts and quality of counsel. Brown, 838 F.2d at 456. Any concern that the percentage approach will result in an unreasonably large fee award in cases such as this, where the fund is unusually large, can be addressed in a number of ways, including decreasing an otherwise reasonable percentage as the fund increases. Conte, § 2.09 at 55-58; Task Force Report, 108 F.R.D. at 256; Newberg, § 14.03 at 14-14. In fact, the court in this case reduced the award to ten percent in light of the size of the fund.
I would follow the lead of the federal courts and hold that it is within the trial court's discretion whether to use the lodestar or percentage approach to awarding attorney's fees in common-fund cases. There is no question that the "time and labor involved" will be a relevant consideration under either approach. However, that factor need not be evaluated using the lodestar formula when the trial court believes that a reasonable fee can be ascertained by giving greater weight to other factors  such as the risk involved, the benefit obtained, and quality of counsel  that will be more adequately reflected by a percentage award. See Brown, 838 F.2d at 456. As with any attorney's fee award, the trial court must clearly articulate the reasons for the award and those reasons must be supported by the record. See Rowe, 472 So.2d at 1151-52; see also Conte, § 2.07 at 43.
Here, although the court clearly gave greater weight to the "risk involved," "the benefit conferred on the class," and "the quality of counsel," it considered all the relevant factors and applied them appropriately. For example, in support of its award, the court considered the "time and labor required," finding class counsel had expended a total of 6,730.90 hours prosecuting the lawsuit. The court noted that "substantial effort was expended" in this "complicated and intense" lawsuit, which required extensive discovery and resulted in five separate appeals to this Court and the Fifth District Court of Appeal.
The court also considered the "novelty and difficulty of the questions involved," finding that the difficulty "was considerable." The court found that the class faced "a number of procedural hurdles imposed by the State," including claims of exhaustion of administrative remedies and sovereign immunity. It also found that the constitutional and other issues were complex and this "was not merely a `single issue' statutory challenge."
In considering the "skill required to perform the legal service properly," the court recognized that it took counsel experienced in class actions to successfully take on the State, "a tenacious opponent which fought Class Plaintiffs at every juncture." Similarly, in considering "the experience, reputation, and ability of the attorneys," the court found that class counsel's experience contributed to the efficient and effective prosecution of the action and that the "consistently high quality" of the representation supports the fee award.
The court also considered the fact that "the customary fee," in class action lawsuits is contingent. In considering that the fee in this case was in fact contingent on success, the court found that the "substantial risks of this litigation abundantly justify the fee requested." As to the "amount involved and the results obtained," the court considered the fact that class counsel, "through their *320 efforts, achieved a 100% victory"  a refund to all class members  in a case "fraught with peril, both procedurally and substantively."
The court further considered the fact that this case could be classified as "undesirable," as evidenced by the fact that no other action was brought challenging the Vehicle Impact Fee. The court emphasized that no other law firm "believed that this action was worth pursuing on a contingent fee basis." Even the largest law firm in Florida "expressly declined" to join in the action.
In addressing "awards in similar cases," the court correctly determined that its award was well within the range of reasonable fee awards in other class actions. After considering all the Johnson factors, the court went even further and considered factors that the Eleventh Circuit has suggested are relevant to assessing an award of fees under the percentage approach. The factors most relevant here include "objections to the requested counsel fees," "non-monetary benefits conferred on the class," and "the economics involved in prosecuting a class action." The court thoroughly analyzed each of these factors.
In making the award, the court also recognized that public policy favors the granting of attorneys' fees sufficient to reward counsel for bringing class actions that protect constitutional rights and to encourage counsel to bring such actions in the future. Accord Conte, § 2.08, at 16 (courts are careful to award a reasonable fee based on the underlying economic inducement for class action lawyers to pursue potentially expensive or complex common fund class litigation  the inducement being the reasonable expectation that class counsel will share in the recovery in a fair proportion, rather than merely receiving a fee based initially on time expended that fails to give "results obtained" primary consideration). Finally, although the fourteen percent award requested was otherwise reasonable under the circumstances, the court properly reduced the percentage awarded because the fund in this case is "so large."
After reviewing the trial court's findings in support of the ten percent award, I find no abuse of discretion. The final judgment making the award is a model of clarity in which the trial court clearly articulated its reasons for the award. The record supports the reasons given, which in turn support the award.
Moreover, as noted by the trial court, the ten percent award in this case is within the range of fees generally awarded in cases involving extraordinarily large class recoveries of $75-200 million or more. See Conte, § 2.09 at 57 and cases cited therein. As was done in this case, the normal percentage fee in common-fund cases of 20 to 30 percent is generally reduced to between 6 and 10 percent when the fund approaches or exceeds $100 million. Id. at 52-57.
Not only do the trial court's reasons and a review of other large recovery class actions support the ten percent award, common sense supports the award. The named plaintiffs had to agree to pay class counsel twenty-five percent of any recovery in order to obtain representation in this highly speculative litigation. The absent class members would have received nothing had class counsel not taken the case and diligently litigated it until the class prevailed. Each absent class member simply is being required to pay ten percent of a seemingly fortuitous recovery in legal fees. The absent class members, who number over 600,000, will enjoy a ninety percent recovery despite the fact that their refunds resulted entirely from the initial efforts of the five named plaintiffs and the labors of class counsel. Under the circumstances, I do not find the ten percentage award unreasonable or otherwise shocking and would affirm it.
SHAW, J., concurs.
HARDING, Justice, concurring in part and dissenting in part.
While I agree with the majority's resolution of the standing and residual funds issue, I agree with Justice Kogan that "the percentage-of-the-fund approach should remain available to Florida courts confronted with the task of setting reasonable attorneys' fees in common-fund cases." Opinion concurring in part, dissenting in part at 317. As the Circuit Court of Appeals for the Ninth Circuit *321 has explained, "[a] reasonable fee award is the hallmark of common fund cases, and because arbitrary, and thus unreasonable, fee awards are to be avoided, neither [the percentage nor the lodestar] method should be applied in a formulaic or mechanical fashion." In re Washington Public Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295 n. 2 (9th Cir.1994).
When judges have the discretion to choose the method for calculating fee awards in common-fund cases, they can choose the method that best suits the circumstances of each case. For example, in a case where the common fund is modest but a large number of hours have been expended, the lodestar approach may be the better method for calculating attorney's fees. The circumstances of some cases may even require "a combination of both [the percentage of fund and lodestar] methods when appropriate." In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 308 (1st Cir.1995); accord In re Unisys Corp. Retiree Medical Benefits ERISA Litig., 886 F. Supp. 445, 463 (E.D.Pa. 1995) (employing modified lodestar approach to determine reasonable percentage); 1 Alba Conte, Attorney Fee Awards § 2.09 at 59 (2d ed. 1993) (hybrid percentage/lodestar approach frequently used to determine fee where substantial legal hours associated with recovery of megafund, especially when multiple plaintiffs' attorneys will be sharing in award). Under the majority's approach, Florida courts would have no discretion to fashion such a hybrid method even where warranted by the circumstances of the case. Thus, I join Justice Kogan in dissenting from the majority's decision that the lodestar approach should be the only method for determining attorney's fees in common-fund cases.
"`In determining fee awards in class actions, it is especially important that judges not be unduly influenced by the monetary size of the settlement.'" Washington Public Power, 19 F.3d at 1297 (quoting In re Washington Public Power Supply Sys. Sec. Litig., 779 F. Supp. 1063, 1097-98 (D.Ariz. 1990)). However, I fear that the large class recovery, estimated at $188.1 million, may be driving the majority result in this case. Using the percentage method, the trial court determined that ten percent of the common fund ($18.8 million) was a reasonable fee. This percentage is substantially less than the twenty to thirty percent that is considered the "normal range" of fee awards in common-fund cases. See Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 774-75 (11th Cir.1991) ("The majority of common fund fee awards fall between 20% to 30% of the fund."); Conte, § 2.08, at 50-54 and cases cited therein. Yet, I concur with the majority that this sum is too large under all the circumstances of this case. In contrast, by using the lodestar method, the majority concludes that the reasonable attorney fees are $6.47 million, or less than three and a half percent of the common fund. Majority op. at 315. I think that this sum is not adequate. This percentage is substantially below the percentage awarded in similar megafund cases, even where the lodestar approach was applied. See In re "Agent Orange" Prod. Liab. Litig., 611 F. Supp. 1296 (E.D.N.Y. 1985) (5.5% awarded from original fund of $180 million), aff'd in part, rev'd in part, 818 F.2d 226 (2d Cir.1987); In re Folding Carton Antitrust Litig., 84 F.R.D. 245 (N.D.Ill. 1979) (6.6% awarded from $218 million settlement fund).
Courts deviate from the "normal range" of twenty to thirty percent in cases where the fund is modest compared to a large number of hours reasonably expended or when the fund is extraordinarily large ($75 to $200 million or more). Conte, § 2.09, at 57. In such megafund cases, fees awards usually fall in the six to ten percent range. See, e.g., Sioux Nation of Indians v. United States, 650 F.2d 244 (Ct.Cl. 1981) ($106 million recovery, fees of 10% awarded); In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297 (N.D.Ga. 1993) ($305 million recovery, fees of 5.25% awarded); In re MGM Grand Hotel Fire Litig., 660 F. Supp. 522 (D.Nev. 1987) ($205 million recovery, fees of 7% awarded); Conte, § 2.09, at 57. But see Van Vranken v. Atlantic Richfield Co., 1995 WL 507005 (N.D.Cal. 1995) ($67.5 million recovery, fees of 25% awarded); Brown v. Phillips Petroleum Co., 838 F.2d 451 (10th Cir.) ($75 million recovery, fees of 16.5% awarded), cert. denied, *322 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988).
In general, the percentage amount awarded tends to decrease as the size of the recovery increases. Domestic Air, 148 F.R.D. at 350-51 & n. 76; Conte, § 2.09 at 57. Such a downward adjustment avoids an excessive award where the recovery is extraordinarily high. It also recognizes the economies of scale that are inherent in large class actions. See Domestic Air, 148 F.R.D. at 352. As one federal district court observed, "[t]wenty-five or thirty percent might be an appropriate award on a recovery of a million dollars. It is likely, however, to result in a windfall where the recovery totals many millions of dollars." In re Superior Beverage/Glass Container Consol. Pretrial, 133 F.R.D. 119, 124 (N.D.Ill. 1990).
The majority has determined that objectivity and consistency are important goals in setting fees in common-fund cases. See Majority op. at 312. Accordingly, I think it would be wise for this Court to adopt the following percentage guidelines for common-fund cases which involve a large recovery: ten percent for recoveries of $75 to $150 million; eight to nine percent for recoveries of $150 to $175 million; six to seven percent for recoveries of $175 to $200 million; and less than six percent for recoveries exceeding $200 million. Of course, these percentages would merely serve as a "benchmark" which could be "adjusted in accordance with the individual circumstances of each case." Camden I, 946 F.2d at 775. As discussed in Justice Kogan's opinion, the trial court would still be required to clearly articulate the reasons for the attorney's fee award, based upon the factors enumerated in Rule Regulating The Florida Bar 4-1.5, and those reasons would have to be supported by the record. Opinion concurring in part, dissenting in part at 318-319.
However, even if the majority of the Court determines that the lodestar approach is the only method available for determining fee awards in common-fund cases in Florida, that ruling changes the law of Florida and I believe that it should not be applied to plaintiffs' counsel here. As noted by Justice Kogan, Florida courts have routinely awarded attorney's fees in common-fund cases on a percentage basis. Opinion concurring in part and dissenting in part at 316 and cases cited therein. Also, Florida Rule of Civil Procedure 1.220, which governs class actions in Florida, is based on Federal Rule of Civil Procedure 23. See Florida Bar re Rules of Civil Procedure, 391 So.2d 165, 170 (Fla. 1980). While federal cases involving Rule 23 class actions are not controlling precedent in rule 1.220 class actions, it would not be unreasonable for counsel to look to these federal cases for guidance as to how fees are determined under the federal prototype. In 1991, the Eleventh Circuit Court of Appeals mandated that all "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." Camden I, 946 F.2d at 774. The United States Supreme Court has always computed common-fund fee awards on this basis as well. See, e.g., Boeing Co. v. Van Gemert, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Central R.R. & Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); Internal Improvement Fund Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881). Thus, plaintiffs' counsel had a reasonable expectation that fees would be awarded on a percentage basis in this case. Moreover, based upon this prevailing case law, I cannot say that the trial judge "erred" in using the percentage approach in this case.
For the reasons discussed above, I dissent from both the majority's application of the lodestar approach in this case and its determination that the lodestar is the only approach for determining fee awards in common-fund cases. I would set the fee in this case at six percent of the common fund or $11,286,000.
NOTES
[1] In addition to 10 percent of the common fund, the court awarded counsel $73,529.70 in costs and expenses.
[2] The factors enumerated in Camden I are the same factors provided for in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974).
[3] Rowe and Quanstrom are fee-shifting cases. In a fee-shifting case the adverse party is required by statute or contract to pay attorney fees of the prevailing party. Fee-shifting cases differ from common-fund cases in that attorney fees in common-fund cases are paid out of the common fund rather than by the adverse party.
[4] Because we reject the percentage approach as a matter of law, our review of this case is not limited by the abuse-of-discretion standard. The abuse-of-discretion standard would have applied if we had accepted the percentage approach and we were deciding whether the percentage picked by the trial judge was within the boundaries of reasonableness.
[5] Rowe, 472 So.2d at 1150; Quanstrom, 555 So.2d at 830 and n. 3. These factors are now located in rule 4-1.5(b) and (c) of the Rules Regulating the Florida Bar:

(b) Factors to Be Considered in Determining Reasonable Fee. Factors to be considered as guides in determining a reasonable fee include:
(1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.
(c) Consideration of All Factors. In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from the application of only the time and rate factors.
[6] We note that under the lodestar approach, a court can also find that an enhanced or a diminished fee is reasonable on the basis of the results obtained or the circumstances of the particular case. There may be circumstances in which the attorney fees would so substantially reduce the fund that the fees would have to be equitably diminished.
[7] Neither Rowe, Quanstrom, nor this decision limits the enforcement of fee agreements negotiated between counsel and clients. See Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz, 652 So.2d 366, 368-69 (Fla. 1995). These contracts are regulated by rule 4-1.5 of the Rules Regulating The Florida Bar.
[8] 555 So.2d at 834.
[9] Accordingly, we find that in all common-fund cases in which attorney fees have not been assessed by a trial court using the lodestar approach as of the date of this opinion and in which a multiplier is determined to be appropriate, the maximum multiplier can be as much as 5. The criteria set forth in Quanstrom are to be used to determine initially whether a multiplier is needed and thereafter to set the amount of the multiplier. See Quanstrom, 555 So.2d at 834.
[10] The total amount then to be paid in fees and costs from the common fund is $6,550,997.20.
[11] Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), modified, Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990).
[12] Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990).
[13] Even subdivision (c) of rule 4-1.5 recognizes that:

[T]he time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from the application of only the time and rate factors.