616 So.2d 494 (1993)
FLORIDA INLAND NAVIGATION DISTRICT, Appellant,
v.
A. Brooks HUMPHRYS, Lavina H. Humphrys, his wife, et al., Appellees.
No. 92-1147.
District Court of Appeal of Florida, Fifth District.
March 12, 1993.
Rehearing Denied April 16, 1993.
*495 Harold T. Bistline, Stromire, Bistline & Miniclier, Cocoa, for appellant.
Gordon H. Harris, G. Robertson Dilg and Kent L. Hipp, Gray, Harris & Robinson, P.A., Orlando, for appellees.
COBB, Judge.
Condemnor, Florida Inland Navigation District (FIND), appeals an award of attorney's fees against it in the amount of $347,800.00. This award arose from an eminent domain proceeding it filed to acquire 96 acres of land for the purpose of constructing a soil disposal site. Both the appellant and the appellees (Humphryses) agree the award is governed by section 73.092, Florida Statutes (1991), which provides:
(1) In assessing attorney's fees in eminent domain proceedings, the court shall give greatest weight to the benefits resulting to the client from the services rendered.
(a) As used in this section, the term "benefits" means the difference between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney. If no written offer is made by the condemning authority before the defendant hires an attorney, benefits must be measured from the first written offer after the attorney is hired.
1. In determining attorney's fees in prelitigation negotiations, benefits do not include amounts awarded for business damages unless the business owner provided financial records to the condemning authority, upon written request, prior to litigation.
2. In determining attorney's fees subsequent to the filing of litigation, if financial records are not provided to the condemning authority prior to litigation, benefits for amounts awarded for business damages must be based on the first written offer made by the condemning authority within 120 days after the filing of the eminent domain action. If the condemning authority makes no written offer to the defendant for business damages within 120 days after the filing of the eminent domain action, benefits for amounts awarded for business damages must be based on the difference between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hired an attorney.
(b) The court may also consider nonmonetary benefits which the attorney obtains for the client.
(2) In assessing attorney's fees in eminent domain proceedings, the court shall give secondary consideration to:
(a) The novelty, difficulty, and importance of the questions involved.
(b) The skill employed by the attorney in conducting the cause.
(c) The amount of money involved.
(d) The responsibility incurred and fulfilled by the attorney.
(e) The attorney's time and labor reasonably required adequately to represent the client in relation to the benefits resulting to the client.
(3) At least 30 days prior to a hearing to assess attorney's fees under this section, the condemnee's attorney shall submit to the condemning authority and to the court complete time records and a detailed statement of services rendered by date, nature of services performed, time spent performing such services, costs incurred, and a copy of any fee agreement which may exist between the condemnee and his attorney.
(4) In determining the amount of attorney's fees to be paid by the petitioner, the court shall be guided by the fees the defendant would ordinarily be expected to pay if the petitioner were not responsible for the payment of fees and costs.
(5) The amount of attorney's fees to be paid by the defendant pursuant to a fee agreement entered into between the defendant and his attorney must be reduced by the amount of any attorney's fees awards by the court.

*496 (6) Notwithstanding any other provision of law, if an offer of judgment made by the petitioner, pursuant to s. 73.032, is rejected and the verdict or judgment is less than or equal to the offer of judgment, no attorney's fees or costs shall be awarded for time spent by the attorney or costs incurred after the time of rejection of the offer, except for apportionment or other supplemental proceedings.
The Humphryses entered into a fee arrangement with their attorneys that provided for the latter to receive 10% of any initial offer made by FIND, plus 25% of any sums ultimately paid in excess of that offer, or the amount awarded by the court, whichever was greater. It was established that FIND made an initial offer of $1,491,000.00 but settled for a cash payment of $2,350,000.00, an increase of $859,000.00. The settlement agreement also included provisions for the leasing back of 30 acres of the property to the Humphryses, for the relocation of an easement, and for the installation of two culverts.
After an evidentiary hearing on the issue of attorney's fees, the trial court purportedly applied the foregoing statute and the standards enunciated in Schick v. Dep't of Agric. and Consumer Servs., 599 So.2d 641 (Fla. 1992), wherein the supreme court stated that the contingency risk multiplier, as set forth in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), was not applicable to inverse condemnation actions. The trial court also noted that previous language of section 73.092, which stated that under no circumstances should attorney's fees be based solely on a percentage of the award, had been deleted by 1990 revisions of the statute.
In referring to subsection (4) of section 73.092, the court held:
The guide is nonexistent in that, by statute, the governmental agency is liable to pay the landowners' attorney's fees. There is therefore no evidence available as to what sum a landowner would ordinarily pay his attorney if the governmental agency were not responsible for the fees. It is a ghost guide and therefore cannot be employed. The factors set forth in section 73.092(2) and the benefits resulting to the landowner from the services rendered are the criteria upon which the fees must be based.
The trial court surmised that the only testimony regarding the 10/25 contract signed by the Humphryses as being representative of a "market" contract was the testimony of the Humphryses' attorney, which only concerned the number and type of his existing contracts. The court noted that this was not the measure of a market contract since it must be shown that it is a common contract used by a large number of other lawyers doing the same type of work. The court also commented that testimony was presented as to a 5/15 contract but that one witness testified that, most commonly, an agreement was for the attorney to be paid only what was awarded by the court. It was under this framework that the trial court felt restricted to the benefits to the landowner and the traditional considerations for attorney's fees set forth in section 73.092(2).
As to nonmonetary benefits that the Humphryses' counsel obtained for them, the trial court held these benefits to be valued at $1,739,000.00. These nonmonetary benefits included the following:
(1) Difference between original offer and cash settlement equaled $859,000.00.
(2) Obtaining a leaseback of some 30 acres of the property for 40 years representing a benefit to the Humphryses of $100,000.00 ($5,000.00 per year for 20 years).
(3) Relocation of Humphryses' pumping easement ($20,000.00) and obtaining two culverts ($50,000.00).
(4) Obtaining rulings concerning county setback requirements ($650,000.00).
(5) Obtaining use of barn ($60,000.00).
Additionally, the trial court held:
The time expended of 580 hours is reasonable for such a case. The benefits received by respondents as a result of the efforts of their attorneys is $1,739,000.00 and under the facts of this case and the evidence, a blended rate of 20% *497 of benefits received is reasonable. Thus, a reasonable attorney's fees [sic] in this case was set at $347,800.00.
On appeal, FIND first contends that the trial court, in determining a fee award on the basis of a percentage of benefits without regard to an hourly rate, presents a conflict with Schick. We do not agree. The order of the trial court shows that it relied on section 73.092, as amended in 1990, and gave primary consideration to the benefits resulting to the Humphryses. The court recognized the novelty, difficulty and importance of the questions involved as well as the skill of the attorneys. Finally, the court considered the time expended by counsel for the Humphryses and deemed it reasonable. References by the trial judge to the proceeding being like a "contingency type case" may be considered as merely dictum in light of his overall considerations in this case.
We do agree, however, with the appellant's second point: the trial court erred in attributing to the efforts of counsel for the Humphryses a $650,000.00 benefit concerning the trial court ruling that certain Brevard County setback ordinances did not apply to the Humphryses' remaining property, thereby precluding that factor as an additional severance damage claim by the Humphryses. In this case, that ruling was a benefit only to FIND, not to the Humphryses.
The setback ruling was obtained pursuant to a motion filed by FIND asking the trial court "to adjudicate issues of law." In effect, it operated as a motion in limine seeking a trial court ruling which would preclude the Humphryses from claiming additional severance damages on the basis that they would be prohibited from constructing single or multifamily dwellings on their remaining property within 1,000 feet of the FIND construction project. This ruling, of course, could not be a legal benefit to the Humphryses in regard to any subsequent zoning dispute they may have with Brevard County for the simple reason that the latter was not a party to this litigation. As argued by the appellant, section 73.092 does not allow a trial court to attribute a benefit to a defendant owner's attorney for a ruling obtained by the condemning authority which precludes a potential damage claim by the owner. We note that even the expert witness for the Humphryses on the issue of attorney's fees did not attribute a benefit to them in regard to the trial court's ruling on the setback ordinance.
Accordingly, we vacate that portion of the attorney's fee award erroneously attributed to the setback ruling, an amount of $130,000.00, and remand for entry of an award of attorney's fees to counsel for the appellees in the amount of $217,800.00.[1]
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HARRIS, J., concurs.
GOSHORN, C.J., dissents with opinion.
GOSHORN, Chief Judge, dissenting.
I respectfully dissent. I agree with the majority that it was error to attribute a benefit to the Humphryses' attorneys for obtaining the ruling that a setback ordinance did not apply to their property. I disagree that this court should summarily order a reduction in the trial court's attorney's fee award without allowing the court to consider our opinion in this case.
I am unable to find any evidence in the record supporting the trial court's award of a "blended rate" of 20 percent of the benefits received. I speculate that this award was a compromise arrived at because of the trial court's expressed difficulty in applying subparagraph 4 of the attorney's fees statute, section 73.092, Florida Statutes (1991), which reads:
(4) In determining the amount of attorney's fees to be paid by the petitioner, the court shall be guided by the fees the defendant would ordinarily be expected *498 to pay if the petitioner were not responsible for the payment of fees and costs.
The trial court found this statute provided a nonexistent or "ghost" guide. I believe the better view is to treat the statute as creating an ordinary contingent fee standard. The question then presented is, "What would a reasonable person agree to pay an attorney for obtaining $1,089,000?" I would remand with instructions to apply the statute.
NOTES
[1] In response to the dissent, it should be pointed out that the appellees have filed no cross-appeal challenging the trial court's employment of the 20 percent contingency factor in computing the amount of their attorney's fees.