669 So.2d 1162 (1996)
SEMINOLE COUNTY, Appellant,
v.
DELCO OIL, INC., etc., et al., Appellees.
No. 94-1859.
District Court of Appeal of Florida, Fifth District.
March 22, 1996.
*1163 Robert A. McMillan and Lonnie N. Groot, Deputy County Attorneys, and Henry M. Brown, Assistant County Attorney, Sanford, for Appellant.
F.A. Ford, Jr., of Landis, Graham, French, Husfeld, Sherman & Ford, P.A., DeLand, for Appellees.

ON MOTION FOR REHEARING AND CLARIFICATION
PER CURIAM.
Appellant's Motion for Rehearing is granted in part and denied in part. We withdraw our prior opinion and substitute the following in its stead.
Appellant, Seminole County ["the County"], seeks review of an attorney's fee award in an eminent domain action. Because we conclude that the method utilized by the lower court in calculating a reasonable fee does not accord with the statutory requirements, we reverse.
In March 1993, the County filed a petition in eminent domain to take certain real property (parcel 105), a Fina gas station, belonging to Delco Oil, Inc. ["Delco"], at the intersection of Semoran Boulevard (State Road 436) and Howell Branch Road in Seminole County. The parties' negotiations quickly led to a stipulation on the compensation due Delco, and an order of taking was entered on June 14, 1993.
On April 22, 1994, a motion to assess attorney's fees and tax costs was filed by Delco. The contract between Delco and its counsel provided for a fee of twenty-five percent of the benefits obtained, or the amount awarded by the court, whichever was greater. Delco claimed that the attorney's services increased the ultimate settlement award by $270,000 *1164 and that twenty-five percent of the benefits[1] totalled $67,500.
The County recognized its obligation to pay a reasonable fee pursuant to section 73.092, Florida Statutes (1993) but contested the amount claimed. The County pointed out that since settlement of the case was reached quickly and since Delco's attorneys spent only 29.3 hours on the case, an award of $67,500 would average an hourly rate of $2,303.75. The County insisted that the lodestar formula should control the computation of reasonable attorney's fees in this eminent domain proceeding. Any alternative approach, argued the County, was invalid as an encroachment by the legislature on the purview of the Florida Supreme Court in regulating attorney practice.
In May 1994, a hearing on the issue of attorney's fees was held. Assistant County Attorney Henry Brown testified for the County. Brown described the negotiations surrounding the settlement of the condemnation award. Brown explained that the County's original declaration of taking was approximately $225,000, but during a telephone conversation, Attorney F.A. Ford, Jr. ["Ford"], Delco's counsel, explained that he believed the estimate was low because it failed to properly consider the cost of moving gas tanks located on the premises. Brown checked with the County's hazardous materials department and determined that, in fact, it would be more complicated than the original offer had taken into consideration, so the County made an adjustment of about $100,000 and made a good faith deposit of $325,000 into the registry of the court. Delco then asserted business damages in their answer and the County's experts produced a business damage report showing $136,075. Upon this information, the County was willing to offer $461,750 and Ford countered with $565,681. The parties agreed to settle at an intermediate figure.
In his testimony, Mr. Ford generally agreed with the county's description of the negotiations. Ford testified that he does not charge fees on an hourly basis. ("I charge on the contract.") The contract calls for compensation on the basis of the percentage of the award. He testified that he expects the client to pay him whatever portion of the fee the county does not pay.
Gordon "Stumpy" Harris testified as an expert for Delco in the field of "condemnation attorney's fees." He testified that he was familiar with the statutory criteria for fee awards in condemnation cases and opined (in accordance with the statute) that the primary factor to be considered was the benefit conferred upon the client by the attorney's services; all other statutory factors were secondary. He testified that in determining a fee based upon benefit, it is "appropriate" under Florida law to apply a standard percentage of the overall benefit as the fee. He testified that in this type of case, "a twenty-five percent contingency is clearly the market." He examined the contract between Delco and its attorneys and determined it was an appropriate fee arrangement. Harris then opined (in accordance with the definition of "benefit" in the statute) that the "betterment" in this case was $270,000.
In calculating an appropriate attorney's fee, Harris first determined that the lodestar fee was $8,120. That figure was based upon 46.2 hours at $175 per hour.[2] He *1165 stated that he figured lodestar to get a feel for the time and felt that the time allocated was "extraordinarily reasonable." He then considered a number of ways to calculate the fees in this case, all of which he considered reasonable. He testified he would typically have had a "10/25 fee contract" (ten percent of the initial offer plus twenty-five percent of the benefit), which would have yielded a fee of $90,000. When using a "third of the benefit" method, Harris arrived at a fee of $90,000 as well. Under the formula contained in the revised version of the statute, effective October 1994, Harris arrived at a figure of $88,333.33. He stated that lodestar plus twenty-five percent yielded a fee of $75,000. Twenty-five percent of the benefit (the same as the Delco fee agreement) yielded a fee of $67,500. Lodestar plus twenty percent equalled $62,000. Finally, lodestar plus fifteen percent yielded $49,000. He stated that all of these calculations provided him with a range of reasonableness between $49,000-50,000 and $90,000. He then testified that it was his opinion that a twenty-five percent fee of $67,500, as provided in the Delco fee agreement, was reasonable.
On cross-examination, Harris agreed that the case did not take much effort. He further stated that even if fewer attorney hours were actually spent on the case, his overall recommendation of $67,500 would not change, because of the figure's relationship to the betterment. It did not matter that the fee works out to well over two thousand dollars per hour of attorney labor.
The statute that governs the award of attorney's fees in this case is section 73.092, Florida Statutes (1993). This statute contains significant amendments made in 1990[3] to the predecessor statute, which had been enacted in 1977. Most notably, the 1990 version of this statute requires a weighing of various statutory factors. Under the 1990 version of the statute, in setting the fee the court is instructed to "give greatest weight" to the benefits resulting to the client from the legal services rendered. A series of additional factors are to be given "secondary consideration." These include:
(a) The novelty, difficulty, and importance of the questions involved.
(b) The skill employed by the attorney in conducting the cause.
(c) The amount of money involved.
(d) The responsibility incurred and fulfilled by the attorney.
(e) The attorney's time and labor reasonably required adequately to represent the client in relation to the benefits resulting to the client.
§ 73.092(2)(a)-(e), Fla.Stat. (Supp.1990). Finally, the statute instructs that:
In determining the amount of attorney's fees to be paid by the petitioner, the court shall be guided by the fees the defendant would ordinarily be expected to pay if the petitioner were not responsible for the payment of fees and costs.
§ 73.092(4), Fla.Stat. (Supp.1990). The legislative history indicates that the deficiency in section 73.092 sought to be corrected by the 1990 amendment was the following:
When assessing attorney's fees in eminent domain proceedings under section 73.092, F.S., courts must consider the benefits resulting to the client, the skill of the attorney, the novelty and difficulty of the legal questions involved, the amount of money *1166 involved, and the responsibility incurred and fulfilled by the attorney. The courts are not guided as to what weight to give any of these concerns when assessing the fee award. As a result, high fees have been awarded relative to the benefits received.
The current statute does not define "benefits" nor does it provide how courts should measure such benefits.
Staff of Fla. House Comm. on Judiciary, CS for HB 1357 (1990), Final Staff Analysis & Economic Impact Statement 1, Ch. 90-303, Laws of Fla.[4] Rather than serving to moderate high fees relative to benefit, "benefit" has become the basis for exorbitant fee awards. Seminole County v. Clayton, 665 So.2d 363 (Fla. 5th DCA 1995). Somehow the notion has taken hold that an attorney's fee should be arrived at by calculating some significant percentage of the benefit obtained for the client. Thus, no matter what the value of the property or the effort involved, the landowner gets his or her full compensation and the condemning authority additionally is ordered to pay the lawyer a percentage of the benefit as a fee.
Florida courts have been successful in articulating what constitutes a "reasonable" attorney's fee and how a reasonable attorney's fee should be calculated in most kinds of cases. Kuhnlein v. Department of Revenue, 662 So.2d 309 (Fla.1995); Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990); Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985). In certain types of cases, however, the legislature has, by statute, altered the case law criteria for calculating an attorney's fee. In the case of eminent domain, for example, the legislature has provided in section 73.091 that the condemning authority will pay a "reasonable fee" except as provided in 73.092. This language means either that the exception is found in the offer of judgment provisions of section 73.092, or it means that the legislature intended to approve the award of an "unreasonable" attorney's fee to a landowner. Since the latter interpretation would be absurd, it is doubtful that it was what the legislature intended. We therefore start from the premise that the legislature intends the fee set by the court be a "reasonable" fee. Clayton, 665 So.2d at 364.
The question posed by Seminole County is whether the legislature can decide what constitutes a "reasonable fee" for a Florida lawyer. In Schick v. Department of Agriculture and Consumer Services, 599 So.2d 641, 643 (Fla.1992), the Florida Supreme Court appeared to be willing to cede to the legislature the power to dictate what fees a Florida lawyer can collect. However, Schick dealt with a case where the statutorily authorized fee was less than would be awardable using the factors set forth in Rule of Professional Conduct 4-1.5(b) of the Rules Regulating the Florida Bar. The high court has never said that a fee for work performed by a Florida lawyer which would be excessive under these criteria would nevertheless be a "reasonable" fee properly awardable by a Florida court and collectible by a Florida attorney simply because it was authorized by statute. Based on the language of section 73.091, and to avoid any constitutional issue, we interpret section 73.092 to make fee awards subject to the overarching requirement that the fee be reasonable. Clayton, 665 So.2d at 364. As have our sister courts, we conclude that a fee is unreasonable when the effective hourly rate is excessive, taking into account all the relevant factors. R. Regulating Fla. Bar 4-1.5(c); see Clayton, 665 So.2d at 365; see also Solid Waste Authority v. Parker, 622 So.2d 1010, 1012 (Fla. 4th DCA 1993). Taking all statutory factors into account and weighing benefit more heavily *1167 than all other factors, a fee of $2,300.00 per hour is clearly excessive.
Even if the statute in such a case were to completely control the fee calculation, the question becomes exactly what the statute requires. The problem is that, apart from requiring the "greatest weight" be given to the benefits to the client resulting from the attorney's services rendered, there is no methodology contained in section 73.092 for making the fee calculation. It is significant, however, that section 73.092 reflects the same factors as the lodestar approach approved in Rowe. As the supreme court has explained: "The statute [73.092] mandates a finding regarding attorneys' time and labor (lodestar method).... The basic lodestar factors are contained within these criteria." In re Estate of Platt, 586 So.2d 328, 335 (Fla.1991).[5] Accepting the Florida Supreme Court's characterization of the factors contained in section 73.092, we conclude, as other courts before us have done in attempting to puzzle out the correct fee calculation methodology in condemnation cases, that the place to begin a proper fee calculation should be at the lodestar-like secondary statutory factors. See Parker, 622 So.2d at 1013; Lee County v. Tohari, 582 So.2d 104 (Fla. 2d DCA 1991); City of Orlando v. Kensington, Ltd., 580 So.2d 830 (Fla. 5th DCA 1991). Then the eminent domain equivalent of "the amount involved and the results obtained" Rowe factor, which section 73.092 defines as "benefits obtained," should be used to adjust that figure up or down. Indeed, the statute requires that it be the factor given "greatest weight." This is not as amorphous a directive as it sounds. Trial courts routinely are faced with weighing and balancing the various lodestar factors in the normal case; in eminent domain cases the trial court is simply given the directive always to weigh one factor (benefits) most heavily in arriving at an appropriate "reasonable fee." This does not require or even authorize the award of a percentage of the benefit as the fee. Any relationship between the result of the statutory fee-setting process and a "percentage of benefits" is coincidental.[6]
A fee representing a percentage of recovery is appropriate in a contingency case, not one like the case at bar where payment is assured. Contrary to Delco's position, this type of case is not contingent. Delco's expert says these cases are contingent because (1) payment is delayed until the conclusion of the matter and (2) because the condemning authority has a duty to make "low ball" offers in order to save taxpayer money. Not being paid until the conclusion of a matter does not make a fee contingent, however. Many hourly fee clients pay at the conclusion of the matter, and deferral of payment is a reasonable trade-off for assurance of payment. Nor does the condemnor's efforts to save public money make a case contingent. A "contingent" case is one where payment depends on winning and collecting. The term is simply irrelevant to an eminent domain proceeding. Quanstrom, 555 So.2d at 833, 835.
We note that a variety of formulae are currently being used by trial judges in Seminole county to calculate fees under section 73.092, all of which involve percentages of the benefit. We have seen awards of: twenty percent of the benefit; twenty-five percent of the benefit; lodestar plus twenty percent of the benefit; twice twenty percent of the benefits plus lodestar divided by three and, finally, twice one-third of the benefits plus lodestar divided by three. This is not what the statute requires and to the extent that use of *1168 these formulae give rise to an unreasonably high fee, they are improper.[7]
Because of the structure of section 73.092, the meaning of subsection 73.092(4) is a matter of debate. Some lawyers apparently have succeeded in advancing the position that this provision means that the court must pretend the eminent domain case is the equivalent of a case in which recovery of a fee is contingent upon success. Because an eminent domain case is the very antithesis of a contingent fee case, however, whatever 73.092(4) may mean, we are confident it does not mean that. To the contrary, it seems more likely that this provision simply requires the court to consider the rate at which an attorney would normally charge his client for legal representation in types of cases other than eminent domain. Indeed, the purpose of this provision most likely was to avoid exactly what has occurred in these casesthat in eminent domain cases a special "customary attorney's fee" has been created which far exceeds what the petitioner would ever be charged or expect to pay in an ordinary case, especially one where an adequate fee award as part of full compensation is constitutionally guaranteed and payment of the fee is assured since the condemning authority is bound to pay it.
In the present case, the trial court wrote a thorough order. Our decision to reverse the decision of the lower court is directed to certain of the conclusions reached by the trial court in its order. First of all, the court observed that the contract for the attorney's fee in this case provided for the attorney to receive twenty-five percent of the benefits resulting to the client as defined by section 73.092. The trial court noted that the landowner's expert testified that such a fee agreement was "within the range that he has seen." The court also noted that a lodestar plus twenty-five percent would result in a fee of $75,000 but a simple twenty-five percent of the benefits (in accordance with the contract) would amount to $67,500which is the amount the trial court awarded. The court explained in its order that fees customarily charged by eminent domain attorneys must be considered. Time and labor are to be factored in, but merely increasing the hourly rate in this case would not adequately compensate an attorney in this case who successfully brought this litigation to an early conclusion. We disagree with this approach. As we explained in the Kensington case, the appropriate fee for a case such as this is to be determined after the litigation by applying the statutory factors. Kensington, 580 So.2d at 831. To allow a fee contract between eminent domain counsel and his client to control the amount of fee to be awarded and to allow the reasonableness of such a contract fee to be buttressed by the testimony of other eminent domain counsel that such fees are "customary" drives an already tortured procedure into the realm of the absurd. The 1990 amendments plainly indicate the legislature did not intend the fee agreement to affect the fee award; the legislation expressly contemplated that a landowner might opt to contract to pay a fee greater than the fee awarded. § 73.092(5), Fla.Stat. (1993). A fee agreement between an eminent domain counsel and his client is certainly appropriate to govern a variety of aspects of the relationship but it cannot govern the determination of what constitutes a "reasonable fee." That must derive from weighing the statutory factors. At most, the fee agreement serves to limit the fee. 580 So.2d at 831-32.
Second, it appears that the lower court was influenced by its conclusion that a percentage fee is appropriate in order not to penalize a lawyer who settles quickly and avoids protracting the litigation. This argument was also advanced by the dissent in the recent Kuhnlein decision. 662 So.2d at 318 (Kogan, J., dissenting). The majority implicitly rejected this rationale, however, by adhering to a lodestar plus multiplier approach. Further, it would be a breach of a lawyer's professional responsibility to delay a favorable settlement or resolution of a case in order to run up hours. Our own experience is that lawyers take seriously their obligation to act in the best interests of their client and seek the quickest possible favorable resolution without regard to any limiting effect on *1169 a potential fee award. Our decision-making should be able to assume that counsel's conduct will be in conformity with the Rules of Professional Conduct. Cf. Kuhnlein, 662 So.2d at 311. The fee awarded below, calculated on the basis of twenty-five percent of the benefit obtained by counsel, and resulting in an effective hourly rate in excess of two thousand dollars, is excessive and is reversed. A reasonable fee under the 1990 statute should be calculated by considering the several statutory factors adjusted up or down by the benefits resulting to the client from the services rendered to arrive at an appropriate award.
Even though Seminole County prevails in this appeal, Delco is nevertheless entitled to recover its attorney's fees on appeal. This result, though peculiar, is mandated by the legislature. § 73.131(2), Fla.Stat. (1993).
REVERSED and REMANDED.
COBB, HARRIS and GRIFFIN, JJ., concur.
NOTES
[1] For purposes of calculating an attorney's fee in eminent domain cases, "benefit" is defined by section 73.092, Florida Statutes to be:

[T]he difference between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney. If no written offer is made by the condemning authority before the defendant hires an attorney, benefits must be measured from the first written offer after the attorney is hired.
§ 73.092(1)(a), Florida Statutes (Supp.1990).
[2] The reason for the difference between the 29.1 hours argued by the County and the 46.2 hours testified to by Mr. Harris is not entirely clear. There is an affidavit of Ford in the record that reflects considerably fewer hours, and we cannot find documentation for the number used by Mr. Harris. On appeal, Delco has contended that the number of hours was immaterial to the lower court's decision, which appears to be correct. Thus, on remand in light of our opinion, it would be appropriate to reopen the issue of the number of hours properly compensable. Since it appears to us, however, that the underlying basis for this dispute over the number of hours appears to center on whether Delco is entitled to recover fees for establishing the amount of fees the County is to pay, it is appropriate that we address that issue. Again, the statute provides little guidance but it appears that Delco is correct that it is entitled to include in the calculation of compensable hours the time spent to recover fees. First, we observe that Florida's legislature has historically taken a very broad view of the guarantee of full compensation to a landowner. Art. X, § 6, Fla. Const. See § 73.131(2), Fla.Stat. (1993). Also, in the case of eminent domain, unlike the situation presented in State Farm Fire & Casualty Co. v. Palma, 629 So.2d 830, 833 (Fla.1993), the case on which the County principally relies, the determination of the amount of the fees does not inure solely to the benefit of the attorneyat least where, as here, the client is contractually committed to pay a higher fee. The statute contemplates that the fee awarded under the statute may be less than the fee the landowner has agreed to pay and requires that the amount of fees payable under a fee agreement be reduced by the amount awarded by the court. See § 73.092(5), Fla.Stat. (1993).
[3] Ch. 90-303, Laws of Fla. It also deleted a prohibition on the basing of a fee solely on a percentage of the award, which we note is not the same as authorizing the calculation of a fee based on the percentage of the award.
[4] The "long run effects" of this legislation were described in the legislative history as follows:

The bill should reduce attorney's fees in the types of cases generally handled by local governments involving "street widenings" or "sidewalks" because attorneys should not be able to put an unusual amount of time into cases and get a fee which may be equal to or greater than the benefits obtained for the landowner. However, courts can still award a fee based on factors other than the amount of benefits obtained for the landowner in the unusual case. However, the court cannot rely solely on the hours invested by the lawyer in the case to set a fee award.
Staff of Fla. House Comm. on Judiciary, CS for HB 1357 (1990), Final Staff Analysis & Economic Impact Statement 5, Ch. 90-303, Laws of Fla.
[5] The supreme court in Platt was describing the pre-1990 statute; however, the identified statutory criteria are the same as under the 1990 version.
[6] We note that in Florida Inland Navigation District v. Humphrys, 616 So.2d 494 (Fla. 5th DCA 1993), this court approved a "blended" percentage fee. The issue presented in that case was whether the fee awarded presented a conflict with Schick. We agree that Schick itself does not forbid the use of a percentage. Rather, the statute requires the application of the stated factors, which the Humphrys court found had been done. It is not so important whether the fee is expressed in dollars or percentage since the dollar figure awarded will always represent some percentage of the benefits. We note too that the effective hourly rate of compensation resulting from our decision in Humphrys came to about $375.00. Clayton, 665 So.2d at 365.
[7] We acknowledge that in 1994 the legislature again amended this statute, resulting in use of a straight percentage. § 73.092, Fla.Stat. (Supp. 1994).