A. J. RICHEY CORPORATION, A. J. RICHEY, GEORGE K. ZAIN, and LELIA P. KOTMAN v. PAULINE GARVEY, a widow, and CHARLES A. BECKER.

182 So. 216.

En Banc.

Opinion Filed May 21, 1938.

Rehearing Denied July 1, 1938.

*Casey, Walton & Spain,* for Appellants;

*Miller & Harris, A. Judson Hill, Hudson & Cason* and *George O. Knutson,* for Appellees.

TERRELL, J.—Prior to December, 1934, bonds were issued and secured by first mortgage on a thirty-unit apartment house located at Miami Beach, known as Covington Arms Apartments. The mortgage was foreclosed and the bond-holders purchased the property which by reason of bankruptcy proceedings was held as an asset for sale in the United States District Court in New York City.

A. J. Richey was interested in the purchase, and with $2,500.00 placed in his hands by Mrs. Lelia P. Kotman, a widow, secured an option on the property; agreeing to sell ninety-nine-year leases on the individual apartments under the "multi-ownership" plan and that Mrs. Kotman would be awarded apartment No. 30 for the sum she advanced to him. A like agreement was also made with George K. Zain and William L. Lindsey, who advanced Richey $1,600.00 and $3,900.00, respectively, Zain to be awarded apartment 29 and Lindsey to be awarded apartments 12 and 22. Kotman, Zain and Lindsey bound themselves to pay monthly maintenance charges during the terms of their lease.

Charles A. Becker, one of the bondholders, and his sister, Mrs. Pauline Garvey, became interested in Richey's proposition to acquire the property. Richey told Becker and Mrs. Garvey of his plans and the agreement he had made with Kotman, Zain and Lindsey to purchase individual leases on designated apartments. Richey, Becker, and Garvey then entered into an agreement to purchase the property with money they had raised, which also included the sums paid Richey by Kotman, Zain, and Lindsey. Title was taken in the name of Mrs. Garvey December 29, 1934, and three days later Richey, Becker and Garvey entered into a written contract, agreeing on the price at which the apartments should be sold and that the profits should be equally divided between Becker and Richey; that a corporation should be formed and the title conveyed to it by Mrs. Garvey, who was to have 1,000 shares of its stock, 181 shares of which she was to assign to the parties who had paid in money on the purchase of leases.

After the purchase, Kotman, Zain and Lindsey, under a new contract with Richey, Becker, and Garvey for the leases, were placed in possession of and took up residence

in the apartments they had previously agreed to purchase from Richey. Becker then became dissatisfied with the trade. He and Richey disagreed and Becker and Garvey notified all parties that they had abandoned and would go no further with the contract. Richey then instituted suit against Becker and Garvey to terminate the partnership between them, and having declined to carry out their contract with Kotman, Zain, and Lindsey, they instituted a cross complaint against Richey, Becker, and Garvey to compel specific performance of that agreement or to recover damages for breach thereof.

An answer was filed to the bill and the cross bill, a master was appointed, who took testimony and recommended that Kotman, Zain, and Lindsey have specific performance of their purchase contract, but due to the impracticability of and in lieu of enforcement, he recommended that damages be awarded Mrs. Kotman in the sum of $8,800.00, to George K. Zain in the sum of $3,400.00, and to W. H. Lindsey in the sum of $5,900.00. He also recommended dissolution of the contract between Becker and Garvey and Richey and that Richey be awarded a money judgment in the sum of $12,500.00 with other relief. The Chancellor sustained exceptions of Becker and Garvey to the Master's report and overruled exceptions of the cross complainant. He denied any allowance for attorneys' fees, found that a partnership never existed between Richey, Becker, and Garvey, but that the subject matter of the suit was purchased by Richey, Garvey, Becker, Kotman, Zain, and Lindsey, that Garvey held it as trustee and that they were entitled to share *pro tanto* in the profits from the sale of it. Richey, Kotman, and Zain appealed.

The difference in the finding and recommendations of the Master and the final decree of the Chancellor grew out of the difference in view entertained by them with refer-

ence to the status of the parties and their relation to the transaction. The Master found that Richey, Becker, and Garvey were co-partners or joint adventurers to purchase and sell the property for a profit and that the amounts contributed by Kotman, Zain, and Lindsey were for the purpose of and were contributed with the understanding that they were to receive ninety-nine-year proprietary leases on the apartments contracted to be sold them.

The Chancellor on the other hand took the position that Kotman, Zain, Richey, Becker, Lindsey, and Garvey syndicated themselves together as partners or co-adventurers to purchase the property and sell it at the best price obtainable, and that consequently each of them should share *pro tanto* in the profits arising from the sale.

We fail to find support in the record for the Chancellor's finding. The bill of complaint, the cross bill, and the answer were all cast on the theory that Richey, Becker, and Garvey were partners or joint adventurers in the enterprise. The contracts between Richey, Becker, and Garvey on the one hand and Kotman, Zain, and Lindsey on the other, for the purchase of the apartments show conclusively that they were to receive nothing else, and consequently negative the idea that they were to receive any part of the profits from the sale or were otherwise interested in the sale. The answer of Kotman, Zain, and Lindsey to the bill of complaint lays no claim to any interest in the profits from the sale. The answer of Richey to the cross bill states in terms that Kotman, Zain, and Lindsey did not join Richey, Becker, and Garvey in the purchase, were not to share in the gains and losses from the purchase, and the evidence nowhere states or points to the fact that they were to become a part of any syndicate or partnership of co-adventurers for the purchase of the property.

It is quite true that the money paid by Kotman, Zain and Lindsey to Richey for the apartments contracted to them went into the joint adventure and constituted a portion of the funds that paid for the property, but as heretofore stated, they were paid with the express understanding that the payors were to be deeded ninety-nine-year leases on designated apartments including 181 shares of stock and none of them thought of having a part or interest in the purchase in any other respect. We are mindful of the rule that whether a party to a transaction of this kind will be construed as a co-partner or co-adventurer is one of intent, but we find nothing on this point that would make Kotman, Zain, and Lindsey co-adventurers.

We think therefore that Richey, Becker, and Garvey were co-partners or joint adventurers in the purchase and sale of Covington Arms Apartments, that Becker and Garvey breached their contract with Richey without cause and that Richey is entitled to a decree dissolving the contract including such damages as he may show to have suffered from the breach. We are also of the view that Kotman, Zain, and Lindsey were purchasers in good faith from Richey, Becker, and Garvey, and that they are entitled to specific performance of their contract or to damages in lieu of their failure to do so. If damages rather than specific performance should in the judgment of the Chancellor be awarded, the measure of such damages will be the difference between what the apartments are actually worth and what Kotman, Zain, and Lindsey agreed to pay for them. "Actual worth" has reference to a *bona fide* sale or offer to sell by one responsible and able to purchase or the equivalent. It will not be concluded by a scale of speculative or prospective values set upon the thing sold.

Richey's damages will be determined by the loss he sustained from the breach of the contract including his share

of anticipated profits for which he should be awarded reasonable compensation if such can be proven and measured by some definite and known yardstick. Damages in either case will not be allowed on guess and speculation nor will they be predicated on fictitious or supposed values. Twyman v. Roell, 123 Fla. 2, 166 So. 215; Maguire v. Kiesel, 86 Conn. 453, 85 So. 689; Atlantic Coast Realty Co. v. Townsend, 124 Va. 490, 98 S. E. 684.

What we have said about the measure of damages to be awarded is based on the assumption that the *res* is solvent and will bring at sale an amount larger than the obligations found against it. If such is not the case, a different division of the proceeds may become more equitable. Under the facts of this case, no damages can be recovered outside the value of or the proceeds of the property because the pleadings go no further. If a sale results in proceeds below the purchase price, there will be no anticipated profits to divide and unless it is shown that Becker's refusal to go through with the contract in some way caused the decline in price, Richey's damages may be limited to his *pro tanto* share in the proceeds; in fact, it may develop that in equity, Kotman, Zain, and Lindsey should share in the proceeds in the same manner. The testimony is not such that these questions can be adjudicated.

The only other question necessary for us to adjudicate is whether or not the Chancellor committed error in refusing to allow a reasonable attorney's fee for Richey's counsel.

The general rule is that costs including attorney's fee will be allowed from the estate in cases where trustees or *cestui que* trusts represent all the beneficiaries and bring a fund in Court for distribution or in cases of partnership accounting, but even in these cases, the matter is one vested largely in the discretion of the Chancellor. Wade, *et al.*, v. Clower, 94 Fla. 817, 114 Sou. 548.

So far as the record discloses, Becker declined to go through with the adventure because he reached the conclusion he had made a bad bargain and no other. Fraud or other inducement is not charged. If this was the case, Richey was forced to bring suit for dissolution and accounting and being so, he was entitled to have his attorney paid from Becker's part of the proceeds.

The judgment below is reversed with directions to ascertain the damages that should be awarded the parties hereto under the rule prescribed and enter judgment according.

Reversed.

ELLIS, C. J., and WHITFIELD, BROWN and CHAPMAN, J. J., concur.

BUFORD, J., dissents.

BUFORD, J. (dissenting).—I think the Chancellor's findings are substantially supported by the evidence and am therefore of the opinion that the decree based on those findings should be affirmed.