732 So.2d 1156 (1999)
HORIZON/CMS HEALTHCARE CORPORATION, et al., Appellants/Cross-Appellees,
v.
SOUTHERN OAKS HEALTH CARE, INC., et al., Appellees/Cross-Appellants.
No. 98-1508.
District Court of Appeal of Florida, Fifth District.
April 16, 1999.
Rehearing Denied May 28, 1999.
*1157 Stephen H. Grimes and Susan L. Turner and Jennifer Parker LaVia of Holland & Knight, LLP, Tallahassee, for Appellants/Cross-Appellees.
Douglas C. Spears and Peter C. Vilmos of Adams & Spears, P.A., and Barbara A. Eagan of Arnold, Matheny & Eagan, P.A., Orlando, for Appellees/Cross-Appellants.
GOSHORN, J.
Horizon/CMS Healthcare (hereinafter "Horizon") appeals the final judgment in favor of Southern Oaks Health Care, Inc. (hereinafter "Southern Oaks") in the multimillion dollar breach of contract case filed by Southern Oaks. Of the numerous issues argued in the appeal and cross appeal, only one issue merits discussion.[1]
Horizon is a large, publicly traded provider of both nursing home facilities and management for nursing home facilities. It wanted to expand into Osceola County in 1993. Southern Oaks was already operating in Osceola County; it owned the Southern Oaks Health Care Center and a Certificate of Need issued by the Florida Agency for Health Care Administration for a new 120-bed facility in Kissimmee. Horizon and Southern Oaks decided to form a partnership to own the proposed Kissimmee facility, which was ultimately named Royal Oaks, and agreed that Horizon would manage both the Southern Oaks facility and the new Royal Oaks facility. To that end, Southern Oaks and Horizon entered into several partnership and management contracts in 1993.
In 1996, Southern Oaks filed suit alleging numerous defaults and breaches of the twenty-year agreements. The case was tried in two parts. Following the bench trial, the trial court found largely in favor of Southern Oaks, concluding that Horizon breached its obligations under two different partnership agreements. The jury likewise found, inter alia, that Horizon had breached several management contracts. Thereafter, the court ordered that the partnerships be dissolved, finding that "the parties to the various agreements which are the subject of this lawsuit are now incapable of continuing to operate in business together" and that because it was dissolving the partnerships, "there is no entitlement to future damages...." In its cross appeal, Southern Oaks asserts that because Horizon unilaterally and wrongfully sought dissolution of the partnerships, Southern Oaks should receive a damage award for the loss of the partnerships' seventeen remaining years' worth of future profits. We reject its argument.
Southern Oaks argues Horizon wrongfully caused the dissolution because the *1158 basis for dissolution cited by the court is not one of the grounds for which the parties contracted. The pertinent contracts provided in section 7.3 "Causes of Dissolution":
In addition to the causes for dissolution set forth in Section 7.2(c)[[2]], the Partnership shall be dissolved in the event that: (a) the Partners mutually agree to terminate the Partnership; (b) the Partnership ceases to maintain any interest (which term shall include, but not be limited to, a security interest) in the Facility; (c) the Partnership, by its terms as set forth in this Agreement, is terminated; (d) upon thirty (30) days prior written notice to the other Partner, either Partner elects to dissolve the Partnership on account of an Irreconcilable Difference which arises and cannot, after good faith efforts, be resolved; (e) the Partners determine, based on the opinion of Partnership counsel, that the Partnership cannot legally remain in existence or continue its business operations without material detriment under 42 U.S.C. §§ 1320a-7 and 1320a-7b(b) and regulations promulgated or proposed pursuant thereto, or any other federal or similar state laws; (f) the Transferring Partner sells its Partnership Interest to the Purchasing Partner; (g) pursuant to a court decree; or (h) on the date specified in Section 2.4.
The term "irreconcilable difference" used in the above quote is defined in the contracts as
[A] reasonable and good faith difference of opinion between the Partners where either (i) the existence of the difference of opinion has a material and adverse impact on the conduct of the Partnerships' Business, or (ii) such difference is as to (x) the quality of services which is or should be provided at the long-term care facilities owned by the Partnership, (y) the adoption of a budget for a future fiscal year, or (z) any matter requiring unanimous approval of the Partners under the terms of this Agreement.
Southern Oaks argues that what Horizon relied on at trial as showing irreconcilable differencesthe decisions of how profits were to be determined and dividedwere not "good faith differences of opinion," nor did they have "a material and adverse impact on the conduct of the Partnerships' Business." Horizon's refusal to pay Southern Oaks according to the terms of the contracts was not an "irreconcilable difference" as defined by the contract, Southern Oaks asserts, pointing out that Horizon's acts were held to be breaches of the contracts. Because there was no contract basis for dissolution, Horizon's assertion of dissolution was wrongful, Southern Oaks concludes.
Southern Oaks contends further that not only were there no contractual grounds for dissolution, dissolution was also wrongful under the Florida Statutes. Southern Oaks argues that pursuant to section 620.8602,[3] Horizon had the power to dissociate *1159 from the partnership, but, in the absence of contract grounds for the dissociation, Horizon wrongfully dissociated. It asserts that it is entitled to lost future profits under Florida's partnership law,[4] relying on subsection 620.8602(3), Florida Statutes. Southern Oaks also cites Born v. Goldstein, 450 So.2d 262, 264 (Fla. 5th DCA) ("In a breach of contract action, the innocent party is entitled to recover any gains presented and losses sustained, including the loss of prospective profits."), pet. for rev. dismissed, 458 So.2d 272 (Fla. 1984). See also Twyman v. Roell, 123 Fla. 2, 6, 166 So. 215, 217 (1936) ("The rule is well settled that if there is a yardstick or measure of damages by which prospective profits may be determined and they arise out of a contract in which profit is the inducement to its making, they may be allowed if proven, whether they arise from farming, mechanical, or other contracts."); 59A Am.Jur.2d Partnership § 565 (1987) ("The right of actions for damages from a partnership dissolution depends on the fact that the dissolution is brought about in violation of the contract between the partners."). Southern Oaks states that its claim is not for wrongful dissolution, but rather arises under applicable contract law.
We find Southern Oaks' argument without merit. First, the trial court's finding that the parties are incapable of continuing to operate in business together is a finding of "irreconcilable differences," a permissible reason for dissolving the partnerships under the express terms of the partnership agreements. Thus, dissolution was not "wrongful," assuming there can be "wrongful" dissolutions, and Southern Oaks was not entitled to damages for lost future profits. Additionally, the partnership contracts also permit dissolution by "judicial decree." Although neither party cites this provision, it appears that pursuant thereto, the parties agreed that dissolution would be proper if done by a trial court for whatever reason the court found sufficient to warrant dissolution.
Second, even assuming the partnership was dissolved for a reason not provided for in the partnership agreements, damages were properly denied. Under RUPA, it is clear that wrongful dissociation triggers liability for lost future profits. See § 620.8602(3) ("A partner who wrongfully dissociates is liable to the partnership and to the other partners for damages caused by the dissociation. The liability is in addition to any other obligation of the partner to the partnership or to the other partners."). However, RUPA does not contain a similar provision for dissolution; RUPA does not refer to the dissolutions as rightful or wrongful. Section 620.8801, "Events causing dissolution and winding up of partnership business," outlines the events causing dissolution without any provision for liability for damages. Under subsection 620.8801(5), the statute recognizes judicial dissolution:
A partnership is dissolved, and its business must be wound up, only upon the *1160 occurrence of any of the following events:
* * *
(5) On application by a partner, a judicial determination that:
(a) The economic purpose of the partnership is likely to be unreasonably frustrated;
(b) Another partner has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with such partner; or
(c) It is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement;....
Paragraph (5)(c) provides the basis for the trial court's dissolution in this case. While "reasonably practicable" is not defined in RUPA, the term is broad enough to encompass the inability of partners to continue working together, which is what the court found.
Certainly the law predating RUPA allowed for recovery of lost profits upon the wrongful dissolution of a partnership. See e.g., Karrick v. Hannaman, 168 U.S. 328, 337, 18 S.Ct. 135, 139, 42 L.Ed. 484 (1897) ("A partner who assumes to dissolve the partnership before the end of the term agreed on in the partnership articles is liable, in an action at law against him by his co-partner for the breach of the agreement, to respond in damages for the value of the profits which the plaintiff would otherwise have received.") (citations omitted); see generally A.J. Richey Corp. v. Garvey, 132 Fla. 602, 182 So. 216 (1938) (holding that where co-partners breached contract, the third partner was entitled to dissolution of the contract and to recover his share of anticipated profits assuming he could establish same); 59A Am.Jur.2d Partnership § 566 (1987) ("In case of a breach of the partnership contract by wrongful dissolution, the damages recoverable include the value of the profits which the plaintiff otherwise would have received, or the value to him of the continuance of the agreement during the term provided by contract, meaning the prospective or anticipated profits of the partnership, or the profits that would have accrued to the injured partner had the partnership not been wrongfully dissolved.") (footnotes omitted). However, RUPA brought significant changes to partnership law, among which was the adoption of the term "dissociation." Although the term is undefined in RUPA, dissociation appears to have taken the place of "dissolution" as that word was used pre-RUPA.[5] "Dissolution" under RUPA has a different meaning, although the term is undefined in RUPA.[6] It follows that the *1161 pre-RUPA cases providing for future damages upon wrongful dissolution are no longer applicable to a partnership dissolution. In other words a "wrongful dissolution" referred to in the pre-RUPA case law is now, under RUPA, known as "wrongful dissociation." Simply stated, under section 620.8602, only when a partner dissociates and the dissociation is wrongful can the remaining partners sue for damages.[7] When a partnership is dissolved, RUPA at section 620.8806 provides the parameters of liability of the partners upon dissolution:
(1) Except as otherwise provided in subsection (2), after dissolution, a partner is liable to the other partners for the partner's share of any partnership liability incurred under § 620.8804.
(2) A partner who, with knowledge of the dissolution, incurs a partnership liability under § 620.8804(2) by an act that is not appropriate for winding up the partnership business is liable to the partnership for any damage caused to the partnership arising from the liability.
Southern Oaks' attempt to bring the instant dissolution under the statute applicable to dissociation is rejected. The trial court ordered dissolution of the partnership, not the dissociation of Horizon for wrongful conduct. There no longer appears to be "wrongful" dissolutioneither dissolution is provided for by contract or statute or the dissolution was improper and the dissolution order should be reversed.[8] In the instant case, because the dissolution either came within the terms of the partnership agreements or paragraph 620.8801(5)(c) (judicial dissolution where it is not reasonably practicable to carry on the partnership business), Southern Oaks' claim for lost future profits is without merit.
AFFIRMED.
COBB and ANTOON, JJ., concur.
NOTES
[1] Horizon argues strenuously that Southern Oaks' expert used an improper measure of damages. Unfortunately, Horizon's trial counsel failed to object to this testimony or to offer evidence on what it now asserts is the correct measure of damages. We reject Horizon's argument that because the issue was presented to the trial court (for the first time) in Horizon's motion for new trial, we can properly address this issue on appeal under the authority of Ruth v. Sorensen, 104 So.2d 10 (Fla.1958) (motion for new trial may properly challenge the verdict as being contrary to the manifest weight of the evidence). Horizon's is not a weight of the evidence argument. In fact, 100% of the unobjected-to evidence supports the verdict.
[2] Section 7.2(c), referred to in section 7.3, provides that if a party defaults under the contract and does not cure the default, the non-defaulting party may elect to purchase the defaulter's entire partnership interest or elect to dissolve the partnership. It continues, "If the Non-Defaulter does not elect to acquire the Partnership Interest of the Defaulter or is precluded from doing so, the Partnership shall be dissolved and terminated pursuant to Section 7.4 of this Agreement by written notice to the Defaulter."
[3] Section 620.8602, Florida Statutes (1997) provides:

620.8602. Partner's power to dissociate; wrongful dissociation.
(1) A partner has the power to dissociate at any time, rightfully or wrongfully, by express will pursuant to § 620.8601(1).
(2) A partner's dissociation is wrongful only if:
(a) It is in breach of an express provision of the partnership agreement; or
(b) In the case of a partnership for a definite term or particular undertaking, before the expiration of the term or the completion of the undertaking:
1. The partner withdraws by express will, unless the withdrawal follows within 90 days after another partner's dissociation by death or otherwise under § 620.8601(6)(10) or wrongful dissociation under this subsection;
2. The partner is expelled by judicial determination under § 620.8601(5);
3. The partner is dissociated by becoming a debtor in bankruptcy; or
4. In the case of a partner who is not an individual, trust other than a business trust, or estate, the partner is expelled or otherwise dissociated because the partner willfully dissolved or terminated.
(3) A partner who wrongfully dissociates is liable to the partnership and to the other partners for damages caused by the dissociation. The liability is in addition to any other obligation of the partner to the partnership or to the other partners.
[4] In 1995, Florida enacted the Revised Uniform Partnership Act (RUPA), effective January 1, 1996 for general partnerships formed on or after that date. However, RUPA applies retroactively to all general partnerships, whenever they were initially formed, beginning January 1, 1998. Fla. Stat. § 620.90 (1997). The prior partnership law, the Uniform Partnership Act, was repealed effective January 1, 1998. Ch. 95-242, § 25, Laws of Fla.
[5] See Arnold M. Wensinger, Note, The Revised Uniform Partnership at Breakup Provisions: Stability or Headache?, 50 Wash. & Lee L.Rev. 905, 933 (1993) ("The meaning of the RUPA's `dissociation' is analogous to the present UPA definition of dissolution. The dissolution of a partnership under the UPA indicates a change in the relationship between the partners. Although dissociation is not expressly defined in the RUPA, the various `events' of dissociation indicate the meaning behind the term.") (footnotes omitted).
[6] One note writer recognized:

Dean Weidner [Reporter for RUPA] believed the continued use of dissolution in the RUPA will cause further confusion because the term "dissolution" always has caused confusion and the RUPA now defines dissolution in a different manner. However, the new RUPA terminology will increase confusion not only for the causes noted by Dean Weidner, but also for the following reasons: (1) the RUPA adds a new term, dissociation, to the primary lexicon of partnership law; (2) the RUPA, while redefining dissolution, substitutes dissociation for dissolution as the primary trigger to the breakup provisions; and (3) the distinction between a dissociation that definitely effects a buyout and one that results in a termination of the partnership is not always clear.
Id. at 933-34 (footnotes omitted). See also James W. Beasley, Jr., 10 ... 9 ... 8 ... RUPA's Retroactive Liftoff, Fla. B.J., Dec. 1997, at 38, 43 ("Under the UPA, the departure of a partner caused a dissolution of the partnership. UPA § 29. Under RUPA, departure of a partner is called a "dissociation" (§ 601); a dissociation may lead to a cash buyout of the partner under Article 7, or to dissolution and winding up of the partnership under Article 8. The term "dissolution," which has an uncommon and confusing definition under the UPA, is unfortunately used again in RUPA. But in yet another way. (§ 805).").
[7] Dissociation is not a condition precedent to dissolution under RUPA. See Weiner & Larson, The Revised Uniform Partnership Act: The Reporters' Overview, 49 Bus. Law 1, 9 (1993) ("Most dessolution events are dissociations. On the other hand, it is not necessary to have a dissociation to cause a dissolution and Winding up.").
[8] Interestingly, Southern Oaks has not argued that reversal of the dissolution is required. It appears, however, that if the facts and circumstances do not warrant dissolution under the contracts or under RUPA, it would be error to order dissolution and the remedy would be reversal, not damages for "wrongful" dissolution.