**IN THE COURT OF APPEALS OF IOWA**

No. 13-2065
Filed January 14, 2015

**LISA KRAGNES, et. al.,**
    Plaintiffs-Appellees/Cross-Appellants,

**BRAD SCHROEDER, BRUCE H. STOLTZE, and STEVEN P. BRICK,**
    Class Counsel-Appellants/Cross-Appellees,

**vs.**

**CITY OF DES MOINES, IOWA,**
    Defendant.
_____

        Appeal from the Iowa District Court for Polk County, Joel D. Novak, Judge.


        Class counsel appeal, and the plaintiffs cross-appeal, the district court's order awarding $7,000,000 in attorney fees in this class action. **AFFIRMED ON BOTH APPEALS.**


        David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellants.

        Elisabeth S. Reynoldson and James W. Brown of Reynoldson & Van Werden, L.L.P., Osceola, for appellees.


        Heard by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, J.**

Class counsel appeal from the district court's order awarding attorney fees, contending the court should not have considered the public source of the funds in limiting the fee award. The class members cross-appeal, contending the award was excessive. The district court carefully considered all relevant factors, adequately explained its analysis, and awarded reasonable attorney fees. We find no abuse of discretion and therefore affirm.

## I. Background Facts and Proceedings.

This class action case has twice before been on appeal. *See Kragnes v. City of Des Moines*, 714 N.W.2d 632 (Iowa 2006) (*Kragnes I*); *Kragnes v. City of Des Moines*, 810 N.W.2d 492 (Iowa 2012) (*Kragnes II*). It was ultimately found that the City of Des Moines charged excessive franchise fees that amounted to an illegal tax, and the city is now required to refund those amounts to the class action plaintiffs. The city has established a common fund of approximately $40 million. The current appeal involves the amount of attorney fees to be awarded to the attorneys who represented the class.

In considering class counsel's request for $15 million in fees— approximately 37% of the fund—the district court analyzed in detail the factors set forth in Iowa Rule of Civil Procedure 1.275(5) and Iowa Rule of Professional Conduct 32:1.5(a). While the court found that the applicable factors in the rules supported a sizeable attorney fee award in this case, the court concluded its analysis by noting the public source of the funds to be used to pay the attorney fees:

> This case involved the City of Des Moines illegally taxing its residents through the exaction of excess franchise fees.
>
> The City of Des Moines is not a private party which can look to private sources to respond to this court's order that it must refund money to its utility paying residents. It is not the city council members that will pay this judgment out of their own pockets. As already stated this Court believes this is a case of first impression and is also unique in that the very people illegally charged excess franchise fees are now going to be called upon to pay themselves the refunds to which they are entitled, including the attorney fees and expenses that are claimed here.

The district court concluded the amount sought by class counsel was not fair to the class members and determined an award of $7 million in fees—approximately 18% of the fund—was appropriate.[1]

Class counsel appeal, claiming the amount is unreasonably low. The class members cross-appeal, contending the amount is unreasonably high.

## II. Scope and Standard of Review.

Iowa courts recognize that the district court is an expert on the issue of reasonable attorney fees. *King v. Armstrong*, 518 N.W.2d 336, 337 (Iowa 1994). We review an award for attorney fees for an abuse of discretion. *Id.* "'Reversal is warranted only when the court rests its discretionary ruling on grounds that are clearly unreasonable or untenable.'" *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration*, *Inc.*, 691 N.W.2d 730, 732 (Iowa 2005) (quoting *Gabelmann v. NFO*, *Inc.*, 606 N.W.2d 339, 342 (Iowa 2000)).

---

[1] One securities class action case, *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 52 (2d Cir. 2000), states "empirical analyses demonstrate that in cases like this one, with recoveries of between $50 and $75 million, courts have traditionally accounted for these economies of scale by awarding fees in the lower range of about 11% to 19%." (citing William J. Lynk, *The Courts and the Plaintiff's Bar: Awarding the Attorney's Fee in Class–Action Litigation*, 23 J. Legal Stud. 185, 202 (1994); 1 Alba Conte, *Attorney Fee Awards* § 2.09 (putting range at 13% to 20%)).

**III. Discussion.**

"Attorney's fees for representing a class are subject to control of the court." Iowa R. Civ. P. 1.275(1). "If a prevailing class recovers a judgment for money or other award that can be divided for the purpose, the court may order reasonable attorney's fees and litigation expenses of the class to be paid from the recovery." Iowa R. Civ. P. 1.275(3).

> In determining the amount of attorney's fees for a prevailing class, the court shall consider all of the following factors:
> a. The time and effort expended by the attorney in the litigation, including the nature, extent, and quality of the services rendered.
> b. Results achieved and benefits conferred upon the class.
> c. The magnitude, complexity, and uniqueness of the litigation.
> d. The contingent nature of success.
> e. In cases awarding attorney's fees and litigation expenses under rule 1.275(4) because of the vindication of an important public interest, the economic impact on the party against whom the award is made.
> f. Appropriate criteria in the Iowa Rules of Professional Conduct.

Iowa R. Civ. P. 1.275(5).

The "appropriate criteria" in Iowa Rule of Professional Conduct 32:1.5(a) are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

The district court carefully considered and discussed all the enumerated factors. After discussing the enumerated factors, the court wrote:

The Court agrees that class counsel has the experience, reputation, and ability in performing the services required in this class action case. This Court does not dispute that in Iowa, as well as other jurisdictions, under the proper set of facts and circumstances, courts are authorized to approve contingency fee agreements between a class and class action attorneys. However, the Court is not bound to do so in each and every case. It depends on the case. The appropriate attorney fee must be viewed in the light of what is fair, reasonable, just, and equitable on a case by case basis.

. . . As already stated this Court believes this case is a case of first impression and is also unique in that *the very people illegally charged excess franchise fees are now going to be called upon to pay themselves the refunds to which they are entitled, including the attorney fees and expenses that are claimed here*. For every dollar paid to class counsel as attorney fees and expenses, those dollars will be paid from the common fund of approximately $40 million, thus reducing the refunds to the city residents.

. . . .

This is not a case about punishing the City. The City is made up of its residents, and it is the residents that bear the burden of the City's illegal conduct in this case. This Court believes that the city council of Des Moines, on a day-to-day basis, does an exceptional job performing the tasks required of them as the governing unit of this city. However, in this case it fell way short of the mark. Though their exacting of the franchise fees was well-intentioned and the funds received were spent for the benefit of the City's residents, the act resulted in an illegal taxation of those residents and places the City and its residents in the predicament they find themselves at this time.

In Chief Justice Mark Cady's dissent in *Kragnes II* he recognized that the attorney fees in a class action such as this would run in the millions of dollars when he stated, "There is little utility in suing yourself, especially when the associated attorney fees and litigation expenses will run into the millions of dollars." [810 N.W.2d] at 517. The attorneys are entitled to be well paid for their work. Still this court knows it must strike a balance as to what is fair to the attorneys and what is fair to the residents of the city. The fees will be paid by the residents of the City of Des Moines.

> *The money used to pay the attorney fees and expenses will come from the very residents who have already been wronged in the illegal exaction of franchise fees and who may now be called upon to remedy that wrong in the form of increased franchise fees, increased property taxes or the reduction of public services* that the residents need and count on.  The balance mitigates in favor of the residents.

(Emphasis added.)

On appeal, class counsel complains the public source of the funds is not one of the factors set forth in the rules and should not have been considered by the court in determining the fee award.  The simple answer is that while rule 1.275(5) requires the court to consider the factors enumerated, it does not preclude a court from considering additional factors.  It is also worth noting the recognition of the public nature of the funds is an aspect of the court's consideration of the "benefits conferred" by the litigation, *see* Iowa R. Civ. P. 1.275(3)(b), inasmuch as the payment of attorney fees out of the common fund reduces the fund paid by the class and established for the benefit of the class.

In *King v. Armstrong*, 518 N.W.2d 336, 338 (Iowa 1994), our supreme court noted the predecessor rules of civil procedure and professional conduct "provide[] guidelines" for the court.  We conclude the public source of the funds here is a legitimate factor for the court to consider.  *See Butt v. Evans Law Firm*, 98 S.W.3d 1, 9 (Ark. 2003)[2] (noting one factor in determining a reasonable attorney fee is "the fact that the suit was against a political entity"); *Nw. Energetic*

---

[2] Arkansas Code section 26-35-902 provides,

> It is the public policy of this state that circuit courts may, in meritorious litigation brought under Arkansas Constitution, Article 16, § 13, in which the circuit court orders any county, city, or town to refund or return to taxpayers moneys illegally exacted by the county, city, or town, apportion a reasonable part of the recovery of the class members to attorneys of record and order the return or refund of the balance to the members of the class represented.

*Servs.*, *LLC v. California Franchise Tax Bd.*, 71 Cal. Rptr. 3d 642, 672 (Cal. Ct. App. 2008) (concluding that trial court erred in an upward adjustment of a lodestar attorney fee award and stating, "other factors suggest that an upward adjustment of the lodestar is inappropriate" and "[one such factor . . . is the *source* from which an attorney fee award would be paid"—here "the attorney fees award . . . would ultimately fall upon the shoulders of California taxpayers" (citation omitted)).

Class counsel argues the contingency fee agreement between the class representative and the attorneys achieves a reasonable attorney fee.[3] The district court concluded it was not bound by that fee agreement, and we agree. The question presented in *King*, was whether the district court abused its discrtetion in awarding attorney fees pursuant to a contingency fee contract. 518 N.W.2d at 336. The *King* court concluded the district court "was properly guided" by the appropriate rules and "did not abuse its discretion" in awarding class counsel pursuant to the fee agreement. *Id.* at 338. Ultimately, "[a]ttorney's fees for representing a class are subject to control of the court." Iowa R. Civ. P. 1.275(1). Courts in other jurisdictions have reached the similar conclusion that the court is not bound by the fee agreement between a class representative and counsel. For example, the Supreme Court of Florida has recognized,

---

[3] Class counsel assert this fee agreement was "pre-approved and class noticed" and the district court gives no reason why it was not followed. As to the claim that the agreement was pre-approved, the district court had refused to certify a class in this action without some assurance the class representative was capable of adequately representing the class—specifically in her ability to finance the litigation. Only after the class representative provided a revised fee agreement wherein class counsel would advance the costs of class litigation was the court convinced she had adequate financial resources to ensure the interests of the class would not be harmed and "approved" the agreement "pursuant to Iowa Rule of Civil Procedure 1.276(2)." The terms of the contingent fee agreement were not included in the notice to the class.

> [I]f the court allowed the written fee agreements to control the fee to be awarded from the common fund, it would be enforcing fee agreements to which the vast majority of class members did not consent. Thus, the fact that class counsel and the named parties agreed that attorney fees would be calculated on a percentage basis cannot control what approach the court should use in exercising its inherent power to determine reasonable attorney fees to be paid from the common fund.

*Kuhnlein v. Dep't of Revenue*, 662 So. 2d 309, 314 (Fla. 1995); *accord United Cable Television of Baltimore Ltd. P'ship. v. Burch*, 732 A.2d 887, 903 (1999) (superseded by statute on other grounds) (holding "the percentage of a contingent fee in the contract between counsel for the Plaintiffs and the named Plaintiffs is not controlling"); *see also Brody v. Hellman*, 167 P.3d 192, 199-200 (Colo. Ct. App. 2007) (noting the court's "obligation to the members of the class with whom no fee agreement had been negotiated was to determine the reasonableness of the award").

Class counsel argues an award of 17.5% of the fund was unreasonable—that 37% was an acceptable fee. We believe, however, that under the circumstances, the district court could determine $7 million in attorney fees to be paid from the common fund was a reasonable attorney fee. As one court has noted, "when the common fund is quite high, as in this case, the percentage recovery should be reduced." *Barker v. Utah Pub. Serv. Comm'n*, 970 P.2d 702, 712 (Utah 1998); *see* Report of Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 256 n.63 (1986) ("In a case in which a large settlement is anticipated, the negotiated contingency range may include relatively small percentages. For example, the *Agent Orange* [(*In re "Agent Orange" Product Liability Litigation*, 611 F. Supp. 1296, 1301 (E.D.N.Y. 1985))] plaintiffs' lawyers

collected over ten million dollars in fees, yet that amounted to less than 6% of the settlement fund.").[4]

The class members for their part argue class counsel did not object to the district court's use of the source of the funds as a relevant factor and thus did not preserve the argument. They contend, in any event, the source of the funds falls within an analysis of rule 1.275(5)(b)—"benefits conferred upon the class." Justice Cady observed that in a case such as this, that is, a class action seeking the return of illegally exacted taxes, "There is little utility in suing yourself, especially when the associated attorney fees and litigation expenses will run into the millions of dollars."[5] *Kragnes II*, 810 N.W.2d at 517 (Cady, C.J., dissenting). That the common fund from which class counsel will be paid is made up of the fees illegally exacted from the class members is properly considered as one aspect of the "benefits conferred upon the class." *See id.* at 519 (Cady, C.J. dissenting) ("Considering the marginal utility of the remedy sought, considering the subsequent legislative adoption of the challenged fee, considering the public

---

[4] Colorado statutorily caps the attorney fees in class actions against public entities. C.R.S.A. § 13-17-203 (providing fee "shall not exceed two hundred fifty thousand dollars"). Alaska Rule of Civil Procedure 82 provides a schedule in fixing the award of attorney's fees to a prevailing party:

|  | Judgment and, if Awarded, Prejudgment Interest | Contested With Trial | Contested Without Trial | Non-Contested |
|---|---|---|---|---|
| First | $ 25,000 | 20% | 18% | 10% |
| Next | $ 75,000 | 10% | 8% | 3% |
| Next | $400,000 | 10% | 6% | 2% |
| Over | $500,000 | 10% | 2% | 1% |

[5] Justice Cady's estimates were not wrong. In addition to the award of attorney fees, the district court ordered class counsel be reimbursed for $517,444 in litigation expenses, and taxed costs to the City in the amount of $74,867.37.

benefit provided by the challenged government action, and considering the substantial public expense of litigation, it is doubtful many class members would share in Kragnes's enthusiasm for her lawsuit.  One of the benefits of a class action is that it allows a plaintiff to pursue a claim by giving an attorney a financial incentive to provide representation. . . . [W]hile it is important to provide a financial incentive for legal representation in meritorious litigation, it should not, in the end, become the only benefit of a class action.").

The class members argue the amount awarded is excessive.  They cite the United States Supreme Court:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.  The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The district court noted "the total hours expended in the processing of this class action by the respective attorneys and their staff totaled 10,624.44 hours.  Of this total amount, 8928.06 hours is attributable to the work of the three senior attorneys."  The class members maintain that the attorney fee awarded is the equivalent of an hourly rate for the attorneys of $784.05, which is far in excess of the $250 to $450 per hour rates for "counsel of comparable experience, skill, and reputation."  In response, class counsel emphasize the risk they took in litigating the case.  The class members in turn disagree as to the magnitude of the risk—pointing out that

with the ruling in *Kragnes I*, what was left to decide was "the amount of damages associated with the illegal franchise fee."

The district court set out the number of hours expended by class counsel (noted above). It then continued with its diligent analysis, considering the "results achieved and benefits conferred upon the class," "the magnitude, complexity, and uniqueness of the litigation," and "the contingent nature of the case":

> This case cannot be measured in the monetary benefit to the class alone. This case has established a very important "principle," not only for the residents of the City of Des Moines, but every other utility paying resident in any city in this state. This case should send a message to all cities that no matter how well-intentioned their conduct or the purpose for which the money taken from its residents is used to benefit the residents, cities in this state must adhere to the rule of law.
>
> . . . .
>
> There can be no doubt concerning the uniqueness of the litigation, its complexity, or its magnitude.
>
> Simple cases do not require the time, effort, and expense expended by class counsel in this case in the processing of pretrial, trial, and posttrial matters. The Court believes this is a case of first impression as it pertains to the issue of what specific cost of supervision, regulation, and administration of activity by a city was valid in establishing a franchise fee. . . .
>
> . . . .
>
> It will be obvious to anyone familiar with the history and background of this case that success was as contingent here as it would have been in any case.
>
> There is no doubt of the great risk class counsel placed themselves in as can be seen by the history of this case over nine years and its involvement in the Iowa courts.

The district court recognized that in non-class action litigation, the customary rate for contingency work ranges from 33.33% to 45% of the recovery and that "the contingent fee agreed to in this case would be considered customary in the locality for similar services provided in civil litigation." *See* Iowa R. Prof'l Conduct 32:1.5(a)(3). Nonetheless,

> The responsibility of determining the appropriate attorneys' fees and expenses in this case is within the discretion of this Court under the requirements of the rules discussed above. This Court has considered the totality of circumstances involved in this case in reaching what this Court believes is a fair and reasonable attorneys' fee and reimbursement for expenses and court costs.
>
>     . . . .
>
> Under the circumstances of this case the court concludes that an appropriate and fair attorneys' fee for class counsel in this matter would be $7,000,000.00 which represents approximately 18.00% of the common fund.

We find the district court took its fiduciary duty to the class members quite seriously.[6]  *See United Health Group Inc. PSLRA Litigation*, 643 F. Supp. 2d

---

[6] One author investigated the various methods courts have employed to determine "reasonable" attorney fees and explained some courts employ an abbreviated lodestar cross-check method:

> To perform the lodestar cross-check, the court, following the litigation, selects a reasonable percentage of the fund from which the initial attorneys' fees amount is to be computed. It then calculates a preliminary percentage-based fee using that percentage. The court next undertakes an "abbreviated" lodestar computation, using the same unenhanced time-rate lodestar calculation as in the multifactor lodestar method, except that the court relies largely on the attorney's sworn statements as to the accuracy and fairness of the hours requested, as opposed to conducting a full-scale investigation into the reasonableness of those hours. Next, the court divides the percentage-based fee by the abbreviated lodestar fee to obtain the implied multiplier. The court then evaluates the reasonableness of this multiplier by comparing it to multipliers that other courts have approved in similar cases. If the implied multiplier is close to previously approved multipliers, the percentage-based fee is reasonable under the lodestar cross-check. Where the implied multiplier does not resemble other approved multipliers, the court will reevaluate its selection of the reasonable percentage rate.

Matthew D. Klaiber, Comment, *A Uniform Fee-Setting System for Calculating Court-Awarded Attorneys' Fees: Combining Ex Ante Rates with A Multifactor Lodestar Method and A Performance-Based Mathematical Model*, 66 Md. L. Rev. 228, 249-50 (2006). This method has been endorsed as a way to make attorney awards between percentage fees and lodestar-based ones more uniform. Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of A Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18 Geo. J. Legal Ethics 1453, 1463-64, 1470 (2005).

Here, the district court awarded the attorneys a fee of $7 million—approximately 18% of the total fund. The three senior attorneys billed a total of 8,927.98 hours. The affidavits from experienced counsel in support of their request reflect counsel of comparable experience, skill, and reputation earn between $250 and $450 per hour. Applying the abbreviated lodestar method, this would result in a lodestar fee of between

1094, 1102 (D. Minn. 2009). The court analyzed relevant factors carefully and determined a fair and reasonable attorney fee. We find no abuse of discretion.

**AFFIRMED ON BOTH APPEALS.**

Danilson, C.J., concurs; Vogel, J., dissents.

---

$2,231,995 and $4,017,591. Dividing the $7,000,000 awarded by these figures results in an implied multiplier of between 3.14 and 1.74. This is within the range of class-action cases where a public entity is assessed attorney fees. *See, e.g.*, *State, Dep't of Health & Soc. Servs. v. Okuley*, 214 P.3d 247, 250 n.11 (Alaska 2009) (approving a 9.25% attorney fee award in common fund case arising from litigation challenging the State's method of determining eligibility for interim disability where the fee award approximated a lodestar calculation with a multiplier of between 2.4 and 3, depending on the hourly fee applied); *Layman v. State*, 658 S.E.2d 320, 334 (S.C. 2008) (enhancing the lodestar by 1.25 to reflect exceptional circumstances in a suit against the State of South Carolina and the State of South Carolina's Retirement System following enactment of legislation requiring working retirees to make pay-period contributions to the system).

**VOGEL, J. (dissenting)**

I must respectfully dissent as I conclude the district court abused its discretion in reducing the attorney fee claim based on the identity of the defendant and the source of the funds that will pay the judgment.

This case has a long and storied history lasting now over ten years and involving two Iowa Supreme Court opinions, a fourteen-day bench trial including testimony from eight expert witnesses, a court record that fills five bankers boxes, and a forty-nine page district court decision.  *See Kragnes II*, 810 N.W.2d at 503.  In addition, the city sought a petition for a writ of certiorari from the United States Supreme Court, which was denied.  *See City of Des Moines v. Kragnes*, 133 S. Ct. 279 (2012).  The case, now on its third appeal, involves only the issue of the appropriate attorney fee to be awarded to class counsel.

At the certification of the class, the court accepted an attorney fee agreement between Kragnes and her counsel that called for a one-third contingency fee if the case proceeded to trial and a forty-five percent contingency fee if the case was appealed.  Crucial to the court's approval of the agreement and the certification of the class was a provision that called for counsel to advance the significant costs involved in the class action.  This placed counsel in a position to suffer financial harm should the action be unsuccessful.  As the district court detailed,

> Class counsel was required to defend motion after motion filed by the City from the very beginning. . . .
> This case has been in our courts since 2004.  To say it was highly contested would be a gross understatement.  The history of this case shows that the City, while it was entitled to do so, erected one barrier after another in an attempt to prevent the class from

being successful in obtaining a refund. Almost without exception, class counsel was successful in dismantling each of those barriers.

. . . .

Class counsel was required to hire its own lobbyist in opposition to the City's attempts to have the franchise fee law changed . . . . They also retained a law firm to advise them on tax related matters.

. . . .

The work of the class counsel is not yet complete. They will be required to oversee distribution of refunds to the class and defend against any further legal issues disputed by the City during the processing of the refunds and possible future appeals to the Iowa Supreme Court.

The work of class counsel has been exemplary. They have met every challenge posed by the City during the pendency of this case. Between counsel and their respective staffs, more than 10,600 hours have been expended in this case. 8928 hours can be attributed to the work by the senior attorneys and approximately 1707 hours attributable to other attorneys, paralegals, and law clerks.

There would have been no common fund to make refunds to the class members without the time, effort, and determination of the class counsel who not only risked losing millions of dollars in compensation based upon an hourly rate involving in excess of 10,600 hours but also being responsible for litigation expenses in excess of $560,000 that class counsel have already paid.

Had class counsel not succeeded in their efforts, they would have lost more than ten thousand hours of otherwise billable work, spanning nearly a decade. They also would have been unable to recoup the hundreds of thousands of dollars in litigation expenses they advanced in the case. It was an enormous risk they were willing to bear, in exchange for the possibility of a handsome fee award. This is the very nature of legal work undertaken with a contingency fee agreement. *See City of Burlington v. Dague*, 505 U.S. 557, 565 (1992) ("An attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not."); *see also King v. Armstrong*, 518 N.W.2d 336, 338 (Iowa

1994) (factoring in the risk of success assumed by the class counsel and the advancement of costs, among other factors, when concluding a fifty percent attorney fee was reasonable). I believe counsel has earned and should be awarded the thirty-seven percent of the common fund judgment received, which is less than the forty-five percent they could be requesting under the fee agreement.

In reaching its conclusion that class counsel was entitled to only eighteen percent of the award or $7,000,000, the district court recited and analyzed the appropriate factors to consider in Iowa Rule of Civil Procedure 1.275(5) and Iowa Rule of Professional Conduct 32:1.5(a). However, the court then proceeded to analyze the identity of the liable party and the source of the funds that will pay the judgment:

> The City of Des Moines is not a private party which can look to private sources to respond to this court's order that it must refund money to its utility paying residents. It is not the city council members that will pay this judgment out of their own pockets. As already stated this Court believes this is a case of first impression and is also unique in that the very people illegally charged excess franchise fees are now going to be called upon to pay themselves the refunds to which they are entitled, including the attorney fees and expenses that are claimed here.· For every dollar paid to class counsel as attorney fees and expenses, those dollars will be paid from the common fund of approximately $40 million, thus reducing the refunds to the city residents.
> Because of the budgetary constraints on the City, the City has stated that the refunds, attorney fees, and expenses will be paid from an increase in franchise fees depending upon the result of the referendum or by the City increasing property taxes and/or reducing services normally provided and needed by the City's residents.

Neither of these issues is included in the factors to be considered when determining the attorney fees in class actions under rule 1.275(5) or rule

32:1.5(a). There is no difference to the class counsel that the wrong-doing party is a public entity versus a private company. There is also no difference in the time, effort, or risk shouldered by the attorneys in this case in light of the fact the common fund will be created with public funds. How the liable party comes up with the funds to pay the outstanding judgment should not diminish the attorney fees the class counsel earned in holding the liable party accountable for their illegal actions.

The attorneys not only succeeded in creating a $40 million fund from which the residents who paid an illegal franchise fee will be reimbursed but also achieved a nonpecuniary benefit for the residents in holding the city accountable. The district court explained:

> This case has established a very important "principle" not only for the residents of the City of Des Moines, but every other utility paying resident in any city in this state. This case should send a message to all cities that no matter how well-intentioned their conduct or the purpose for which the money taken from its residents is used to benefit the residents, cities in this state must adhere to the rule of law. Hopefully the consequences that have resulted from this court's ruling will go a long way to ensure the adherence to the rule of law by our governing units.

In addition, this case served to define and delineate the law passed by the legislature that placed limitations and procedural safeguards on similar fees exacted by cities and municipalities in the future.

The district court failed to specify how it came up with what appears to be an arbitrary figure of $7,000,000. It simply said it considered an award of thirty-seven percent not fair to the class members and that a $7,000,000 fee is "appropriate and fair." Considering the work expended by the class counsel, the result achieved not only for the residents of the city of Des Moines but also for

the residents from other municipalities, and the attorney fee agreement accepted by the court in certifying the class in this case, I conclude a thirty-seven percent attorney fee to be fair and reasonable compensation for the class counsel in this case. I would therefore reverse the district court's order awarding $7,000,000, and remand the case to the district court to award the class counsel thirty-seven percent of the judgment received.